The State of Ohio, Appellee, *v.* Perry, Appellant.

[Cite as State v. Perry (1972), 29 Ohio App. 2d 33.]

(No. 692—Decided January 19, 1972.)

34

Mr. *William J. Abraham* and *Mr. John F. Newcomb*, for appellant.

*Mr. Gerald A. Mollica* and *Mr. John P. Stimmel*, for appellee.

GRAY, J. This cause is in this court on appeal from a judgment of the trial court upon a verdict by a jury finding defendant guilty of failing to obey the lawful orders of a policeman engaged in the performance of his duty at the scene of an emergency contrary to R. C. 2923.43.

The defendant filed his notice of appeal and assigned the following errors:

"Assignment Of Error I. The court erred in overruling the defendant-appellant's motion for change of venue or in the alternative to postpone the trial until public opinion and publicity from the news media had subsided.

"Assignment Of Error II. The court erred in overruling the appellant's motion for a directed verdict at the conclusion of the state's evidence on the grounds that the state failed to establish a case which would present a question for the jury.

"Assignment Of Error III. The verdict is against the manifest weight of the evidence.

"Assignment Of Error IV. Ohio Revised Code, Section 2923.43 is invalid in that it violates Article I of the Ohio Constitution and the due process clause of the Fourteenth Amendment to the United States Constitution.

"Assignment Of Error V. The court committed prejudicial error in failing and refusing to fully instruct the jury on the essential elements of the offense."

The prosecution proved by credible and probative evidence of the weight and sufficiency required to convict defendant of the offense with which he was charged. The facts are as follows: Some time between midnight and 2 a. m. on the morning of May 15, 1970 a crowd of persons numbering 50 to 75 gathered on University Terrace near Memorial Auditorium of Ohio University in the city of

Athens. Nearby, the Delta Tau Delta Fraternity had lately erected a new fraternity house costing about $500,000. Members of this organization were present to protect it from damage.

At that time and nearby defendant was observed with a piece of a brick in his hand. An unidentified person yelled: "Drop that brick!" The police heard the cry, flashed their lights on defendant and cried: "You stop!" to defendant.

Defendant dropped the brick he was carrying in his hand and started to run. He was held for a few seconds by a member of the Delta Tau Delta fraternity until the police arrived. Defendant resisted the arrest but was finally subdued.

On the way to the police station, he complained that there was something in his clothing that was hurting him. He was then searched and it was found that he had a half a brick in his coat pocket. A further search of his clothing revealed that he was carrying rocks of various sizes along with pieces of limestone and bricks.

All during the time that it took the police to subdue defendant, the police were being struck by rocks, bottles and other objects thrown by members of the assembled crowd.

Defendant claims that he did not hear the command to halt, neither did a flashlight play upon him. The police testified that lights did play upon him, that they were close enough for him to hear the command, and that upon the first command to halt defendant ran and threw the brick that he was carrying into a hedge. He was commanded to halt two other times but failed to obey the commands.

Defendant admits that he recognized the police by their uniforms but that they had no authority to arrest him as they were Ohio University Campus Police. Yet, he states he was not near enough to hear their commands to stop. A most anomalous situation.

Defendant took the stand in his own defense. He testified that "voices" at his dormitory on the West Green in the early morning hours of May 15, 1970 awakened him. He

then arose, dressed, and made his way to University Terrace by way of the footbridge over the Hocking River. He smelled tear or pepper gas as he approached the scene of the action. This did not deter him. He proceeded. He denied he threw any rocks at the scene of the melee. However, this was refuted by a policeman who was called on rebuttal.

Defendant admitted he was present that morning for the purpose of "dissenting" and that he probably had intentions of using the bricks and rocks that were found on his person.

We are of the view that the first assignment of error is without merit. Defendant claims that there should have been a change of venue because the members of the venire were prejudiced against him.

Twenty five prospective jurors were called and a jury of twelve was selected after defendant exercised four peremptory challenges. The prosecution exercised one and several were excused for cause. This certainly does not exhibit deep feeling on the part of members of the venire nor on the part of the populace of Athens. Neither does it show any effect of newspaper publicity. We would view it as about a normal situation in the selection of such a jury.

Defendant in his brief states:

"As the questioning continued, the adverse influence of pre-trial publicity remained apparent, but the answers to questions were such that it was not possible to raise a clear challenge for cause."

This statement of defendant provides the answer to the first assignment of error.

These same questions were presented in *State* v. *Laskey,* 13 Ohio App. 2d 91 and were answered adversely to the claims of defendant. It was affirmed in 21 Ohio St. 2d 187.

We have recited the facts in some detail and, in view of them, we are of the opinion that assignments of error II and III are not well taken.

Defendant claims in the court below and in this court that there was no emergency. The jury found that there was one and we are not disposed to disturb that finding. Under the circumstances, the jury was justified in finding that

such a condition existed. Webster's Third New International Dictionary (unabr. 1961) defines an emergency as: "An unforeseen combination of circumstances * * * that calls for immediate action."

The campus security police were authorized to act and make arrests in this situation.

Defendant attacks the constitutionality of R. C. 2923.- 43. In order to successfully assail this section on this basis he must do two things. (1) He must overcome the presumption of constitutionality and (2) he must assume the heavy burden of proof attendant to the assumption of that position. We discuss briefly the above propositions.

It is a fundamental rule that there is a presumption in favor of the constitutionality of a legislative enactment. The general principle has been stated in a variety of ways. Some statements are: that every intendment is in favor of the validity of a statute. *First National Bank* v. *Fellows,* 244 U. S. 416. Courts will indulge in every presumption of constitutionality of which the statute is susceptible and every rational and reasonable presumption must be indulged in favor of the validity of the act. *Cf. Home Tel. & Tel. Co.* v. *Los Angeles,* 211 U. S. 265. The most important basis supporting this fundamental principle is the doctrine which forbids one branch of the state government to encroach on the duties and powers of another. *Sinking-Fund cases,* 99 U. S. 700.

We will now address ourselves to the burden defendant must assume to successfully challenge the constitutionality of R. C. 2923.43. The burden is a heavy one and it is well settled that to sustain it the assailant must negative every reasonable, conceivable basis which might support the statute attacked, and must be able to point out the particular provision that has been violated and the ground on which it has been infringed. *Middleton* v. *Texas Power & Light Co.,* 249 U. S. 152. Its invalidity must be made to appear clearly, plainly, fully, unequivocally, convincingly and by highly persuasive, irrefragable evidence. It has been said by various courts that the validity of a law ought not to be questioned unless it is so obviously re-

pugnant to the constitution that when pointed out by the judges, all men of sense and reflection may perceive the repugnancy.

The Supreme Court, in *Monroeville* v. *Ward*, 27 Ohio St. 2d 179, 182 speaking through Chief Justice O'Neill, said:

"Keeping this in mind, we must examine those statutes and the Constitution to see if they may be reconciled.

"Our duty in such cases is expressed in paragraph one of the syllabus in *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142, as follows:

" 'An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.'

"Application of this principle was discussed in *State, ex rel. Jackman,* v. *Court of Common Pleas* (1967), 9 Ohio St. 2d 159, 162, wherein the court quoted with approval from *State, ex rel.,* v. *Jones* (1894), 51 Ohio St. 492, 503, 504, as follows:

" 'In determining whether an act of the Legislature is or is not in conflict with the Constitution, it is a settled rule, that the presumption is in favor of the validity of the law. The legislative power of the state is vested in the General Assembly, and *whatever limitation is placed upon the exercise of that plenary grant of power must be found in clear prohibition by the Constitution.* The legislative power will generally be deemed ample to authorize the enactment of a law, unless the legislative discretion has been qualified or restricted by the Constitution in reference to the subject matter in question. If the constitutionality of the law is involved [*sic*] in doubt, that doubt must be resolved in favor of the legislative power. The power to legislate for all the requirements of civil government is the rule, while a restriction upon the exercise of that power in a particular case is the exception. (Emphasis added.)' "

Applying the above principles to the facts at hand, it is obvious that defendant has failed in advancing this assignment of error.

Assignment of error No. 5 can best be explained in reciting verbatim the colloquy between the trial judge and defendant's attorney.

"Mr. Abraham: The defendant feels that the jury should be instructed on what is or is not a police officer since that is one of the elements of the offense alleged in the affidavit.

"The Court: The reason the court did not include it in its instructions, because it felt the defendant had had ample opportunity by cross-examination to bring out this fact and if it had been brought out then their testimony would have been irrelevant and not admissible.

"Mr. Abraham: All the elements of the offense are on the prosecution.

"The Court: I believe you said the witnesses testified that they were policemen. Whether they were security officers or any other type of policemen, they did testify they were policemen.

"Mr. Abraham: All right. Whether these other two make legal sense or not, we feel that the jury should have some instructions on when there is or is not an emergency and also what constitutes a lawful order.

"The Court: It should have been handled by special instruction if they had been desired. It is the opinion of the Court that they are words of ordinary meaning and need no definition.

"Mr. Abraham: And finally, as to whether or not a defendant would have the right to resist the attack or whatever you want to call it that Michael Patton at the time that he was—

"Mr. Stimmel: I think that is a completely ancillary issue. We are not suggesting that Michael Patton made the arrest.

"Mr. Abraham: I am sure you don't agree with me, but nevertheless I would like to have it in the record as a part of our objection.

"The Court: I don't understand the objection.

"Mr. Abraham: Well, in other words, it is my interpretation of the law that a man—has the right to resist unlawful arrest if so arrested so unlawfully, has the right

to resist any person who participates in that unlawful arrest including a police officer. That is my interpretation.

"The Court: I would agree with you that he had the right to resist anything that Michael Patton did, but I didn't really see that that was a part of this case."

From an inspection of the record, it is apparent defendant did not properly present this question to the court and hence did not preserve it for review by this court.

We are well aware that the above procedure is the one adopted in 99 per cent of cases involving this question. The effect of such procedure is to say to the trial judge: "I will give you a few seconds to determine whether you will give such charges and then you will have a few minutes to draft charges on these special requests. Then I will be able to sit back and have at least 20 days after the bill of exceptions is filed to research and pick to pieces the requested instructions."

Upon reading the record, it is apparent that the question raised by our dissenting colleague was not preserved in the trial court, hence we cannot consider it. In fact, defendant never thought of it and we do not now know whether defendant would adopt the position taken by our colleague. Defendant would be hard put to claim the error now as he either did not have much confidence in it or didn't think of it. Hence, not having properly raised it, he waived it.

"It is a familiar and very general rule of practice, applicable alike to criminal and civil causes, *that mere partial non-direction * * * as to a particular matter or issue, does not of itself constitute reversible error, in the absence of a request for more specific and comprehensive instructions upon the particular point or issue involved.*" (Emphasis added.) *State* v. *Schiller*, 70 Ohio St. 1, 8. Cited in *State* v. *McCoy*, 88 Ohio St. 447, 455. Both cited with approval in *State* v. *Gordon*, 28 Ohio St. 2d 45.

Judge Herbert, in *Gordon, supra*, at 50, speaking for a majority of the court said:

"As we have often stated, an appellate court will not consider any error which counsel for a party complaining

of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.''

If defendant wanted to preserve his question for review he should have requested an instruction that was strictly accurate and in the exact language in which he thought stated the exact proposition he wished to have the court present to the jury. *Railroad Co.* v. *Schultz,* 43 Ohio St. 270. Compare *Jones & Co.* v. *Herbert,* 7 Ohio Law Abs. 153; *Beach* v. *Chollett,* 31 Ohio App. 8, 13; *Kopachy* v. *Blank,* 7 Ohio Law Abs. 281; *Pletcher* v. *Bodle,* 13 Ohio Law Abs. 708.

This assignment of error is overruled.

We believe that our dissenting colleague has assumed the truth of the fact which he set out to prove. The record reveals that defendant requested the trial court to charge on the meaning of the word ''emergency'' and the definition of ''police officer.'' It was the position of the trial judge that these words and the words of R. C. 2923.43 were words of ordinary meaning and, therefore, needed no explanation as they could readily be understood by members of the jury. The court observed that, if this matter were carried to its logical conclusion, it would be necessary to have a definition for every word of the statute.

The jury requested during its deliberations that the court reread R. C. 2923.43, which was done. We think that the case of *United State* v. *Bayer,* 331 U. S. 532, 67 S. Ct. 1394, is dispositive of this matter. We quote at length from *Bayer* at 536, 537, as follows:

''The Bayers assigned as error the trial judge's charge as to conspiracy. The Court of Appeals unanimously said, 'There is no question but that this charge was an accurate albeit brief, statement of the law.' But a majority thought that 'the statement was so cryptic as to be difficult to understand, if not to be actually misleading to a jury of laymen,' while one Judge thought it 'a welcome relief from much judicial verbosity.' We are not certain whether a reversal as to the Bayers would have been rested on this

criticism of the charge alone. We do not consider objection to the charge to amount to reversible error. Once the judge has made an accurate and correct charge, the extent of its amplification must rest largely in his discretion. *The trial judge in the light of the whole trial and with the jury before him may feel that to repeat the same words would make them no more clear, and to indulge in variations of statement might well confuse.* How far any charge on technical questions of law is really understood by those of lay background would be difficult to ascertain, but it is certainly more evident in the living scene than in a cold record. In this case the jury asked a rereading of the charge on conspiracy. After repeating his instruction, the court inquired of the jury whether anything about it was not clear, or whether there was anything which they desired to have amplified. Nothing was suggested, although inquiry was made as to other matters. While many judges would have made a more extended charge, we think the trial court was within its area of discretion in his brevity.'' (Emphasis supplied.)

See, also, *United States* v. *Grunewald* (C. C. A. 2), 233 F. 2d 556, 569; *Thompson* v. *United States* (5th Cir.), 272 F. 2d 919, certiorari denied, 362 U. S. 940; *Harris* v. *United States* (1st Cir.), 367 F. 2d 633; *Guon* v. *United States* (8th Cir.), 285 F. 2d 140, 142.

Defendant has not sustained the burden of proof he bears on this appeal. The verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the state, to support it. *Glasser* v. *United States,* 315 U. S. 60, 80.

There is no assertion that the court was not correct in charging the jury. The claimed error lies in its brevity.

The trial court sentenced the defendant to 6 months in jail and he was given a $500 fine. We are of the opinion that the imposition of this sentence by the trial court was a mistaken use of discretion. We believe that this sentence is much greater than the proper protection of society demands. Section 3 (B) (1), Article IV, Constitution gives this court original jurisdiction as follows:

"(f) In any case on review as may be necessary to its complete determination."

Under this authority we void the sentence of the trial court and assess a fine of $200 upon the defendant. The judgment of conviction is affirmed.

*Judgment accordingly.*

ABELE, P. J., concurs.

STEPHENSON, J., dissenting. In my view the fifth assignment of error is well taken, and is error prejudicial to the appellant, and the judgment below should be reversed.

The fifth assignment of error is the following:

"The court committed prejudicial error in failing and refusing to fully instruct the jury on the essential elements of the offense."

The charge of the court was eleven pages in length and appears to be basically a standard charge used in criminal cases in Ohio except in one respect. Where the charge is unorthodox is in presenting to the jury the necessary elements which the jury should consider in determining guilt. The following is the portion of the charge concerning the issues the jury was to decide:

"On the 15th day of May, 1970, there was filed in the Athens County Municipal Court, Athens County, Ohio, by one Chief Fred James, Athens Police Department, an affidavit reading in part as follows: 'Before me, personally came Fred James, Athens Police Department, who, being duly sworn, according to law, deposes and says that on or about the 15th day of May, 1970, at the County of Athens, and in the State of Ohio, one Sherman P. Perry, 234 James Hall, Athens, Ohio, unlawfully did fail to obey the lawful orders of a policeman engaged in the performance of his duty at the scene of an emergency, contrary to and in violation of Ohio Revised Code Section 2923.42.' The affidavit is signed by Fred James before Yvonne Wharton, Clerk of this court.

"Section 2923.43 of the Ohio Revised Code states, 'No person shall willfully obstruct, impede, or hamper in any way the lawful operations of sheriffs, policemen, or other law enforcement officers, or firemen, rescue personnel, medical personnel, or other authorized persons, at the scene of fires, accidents, disasters, or emergencies of any kind, and no person shall willfully fail to obey the lawful orders of Sheriffs, policemen, or other law enforcement officers, engaged in the performance of their duties at the scene of or in connection with fires, accidents, disasters, or emergencies of any kind.'

"The defendant's plea of Not Guilty puts in issue all of the material allegations of essential facts as set forth in the affidavit necessary to constitute the offense with which he is charged. The issue for you to determine from all of the evidence, and under the law as I shall give it to you is of the innocence or guilt of the defendant of the offense with which he is so charged."

An examination of the remainder of the charge discloses that no additional instructions were given with respect to the essential elements of the crime set forth above. The procedure evidently adopted was to require the jury to consider the affidavit and the statute and to determine for themselves the essential elements and pass on the sufficiency of the evidence as to each element.

In *Simko* v. *Miller,* 133 Ohio St. 345 at 352, the Supreme Court stated:

"There is, of course, no legally approved standard form of instructions. The only requirement is that the charge comply with fixed legal principles."

R. C. 2945.10(G), formerly G. C. 13442-8 and analogous to former G. C. 13675, provides that the court shall, forthwith after argument, charge the jury. R. C. 2945.11, formerly G. C. 13442-9, provides that in charging the jury, the court must state to it all matters of law necessary for the information of the jury in giving its verdict.

In *Harrison* v. *State,* 112 Ohio St. 429 at 457, the Ohio Supreme Court states with respect to the duty of a trial court in giving a charge the following:

"It must be said that it is a rather brief and in many respects a meager charge, and yet it fairly measures up to the essential requirments of the duty of the court, under Section 13675, General Code, and as that section has been construed by many cases decided by this court. *That duty may be simply stated as a requirement to separately and definitely state to the jury the issues they are to try, accompanied by such instructions as to each issue as the nature of the case may require.* This is the rule declared in *B & O. Rd. Co.* v. *Lockwood,* 72 Ohio St., 586, 74 N. E. 1071, and no different rule has ever been declared by this court. It has, however, been declared in *State* v. *McCoy,* 88 Ohio St., 447, 103 N. E., 136, and *State* v. *Driscoll,* 106 Ohio St., 33, 138 N. E. 376, that mere omission in a charge without a request on the part of counsel for further correct instruction does not constitute reversible error. * * *" (Emphasis added.)

In *Miller* v. *State,* 125 Ohio St. 415, the following was incorporated into the first paragraph of the syllabus:

"1. In a criminal trial, it is the duty of the trial judge to tell the jury all the essentials which constitute the crime charged, and which the jury must find are sustained by the evidence beyond a reasonable doubt before the jury can return a verdict of guilty."

The reason for requiring a trial court to definitely and clearly delineate the issues of fact the jury must decide is readily perceivable. Laymen, not lawyers, comprise the jury. It simply cannot, in fairness, be assumed that a particular jury has the intelligence, capacity and adeptness necessary to pin-point for themselves, essential elements of a crime.

The procedure adopted here, in my view, falls far short of meeting that mandatory requirement that the Ohio Supreme Court declares basic and essential, of clearly and succinctly stating to the jury the necessary elements which must be supported by proof in order to render a proper verdict. Especially this is so where, as here, the criminal statute read to the jury contains other non-applicable offenses.

In their brief, counsel for appellant complain of this failure on the part of the trial court and claim such deficiency was raised at trial. While a complaint was made in other respects as to the charge to the trial court at trial, the record fails to disclose either an objection to the procedure adopted or a motion to require the court to set forth specific elements to the jury. In 169 A. L. R. 315 (1947) the question here presented is extensively annotated under the title "Duty in instructing jury in criminal prosecution to explain and define offense charged." Much authority exists therein classifying such omission as one of "fundamental error" and reversible irrespective whether exception or objection was taken to the charge. See Part IV at page 352 of the above annotation. For later cases see *People* v. *Davis* (1966), 74 Ill. App. 2d 450, 221 N. E. 2d 63 and *Byrd* v. *United States* (D. C. Cir. 1965), 342 F. 2d 939. No Ohio cases directly in point have been found.

Whether or not such failure on the part of counsel waived such error need not be decided here, however, for the reason that the procedure adopted resulted in a prejudicial error of commission under R. C. 2321.03, such section being applicable to criminal trials by reason of R. C. 2945.832. The effect of the subsequent repeal of R. C. 2321.-03 is unimportant here since it was in effect at the time of trial.

R. C. 2321.03 provides, in part:

"Error can be predicated upon erroneous statements contained in the charge, not induced by the complaining party, without exception being taken to the charge."

The principle was applied in *State* v. *Lynn*, 5 Ohio St. 2d 106, the fourth paragraph of the syllabus providing:

"Where there are errors of commission in the charge of a court, not induced by the complaining party, a failure to object thereto does not constitute a waiver of the error and such error may be relied upon in an appeal of such case. (*Rosenberry et al., Admrs.,* v. *Chumney,* 171 Ohio St. 48, followed.)"

An analysis of the statute would require a charge, in addition to a venue requirement, setting out to the jury the following elements or issues:

1. A *willful* failure to obey
2. a lawful order
3. of a sheriff, policeman, or law enforcement officer engaged in the performance of his duties
4. at the scene of or in connection with a fire, accident, disaster or emergency of any kind.

The court chose to require the jury to ascertain the elements of the offense from the affidavit and to determine if proof existed, beyond a reasonable doubt, as to each of such elements. What is omitted from the affidavit is any requirement that the violation be *willful*. Such omission is manifestly prejudicial since one defense advanced was that due to the officers use of gas masks and the attendant noise at the scene of the offense, an order, if given, could not and was not heard by the appellant. In argument, counsel for the State characterized this issue of whether the appellant heard the order as the "crux of the case."

In *Miller* v. *State,* 125 Ohio St. 415, as here, the court read a statute in question which contained a requirement that an act be "knowingly" done. The court therein attempted to set forth the elements of the crime which needed to be present before the jury could establish guilt, but omitted the requirement of knowledge. In reversing, the Supreme Court approved the portion of the Court of Appeals' opinion, at 417, wherein the Appeals court stated:

"It is urged on the part of the State that as he (the trial judge) read the statute to the jury, that he did call their attention to the fact it must be knowingly. That would not be a charge of the Court, calling the jury's attention to what they must find in order to find this party guilty. It would simply be reciting the statute, and it would be presuming, then, that the jury understood the statute without any further charge. So that the Court did not in any place in this charge state to the jury it must be knowingly done * * *."

The Supreme Court rejected the conclusion of the Court of Appeals, however, that the error was one of omission not raised by a general exception, stating at 419:

"The trial court attempted to state the essentials of the crime in the portion of its charge quoted, and it must

follow that when the court undertakes to state all the essentials of the crime, thereby instructing the jury as to what they must find before they can convict, the language of the trial court in that respect must be taken by the jury as embracing all that they need to find in order to convict. We think this portion of the charge must be read as a definite misstatement of the law.''

The rationale in Miller *applies* with equal force here and requires a reversal. Here, the court directed the jury to determine the necessary elements for conviction from the affidavit. In essence, the jury was told to determine guilt based on the essential elements as the jury found them in the affidavit which contained no allegation, required by statute, that the act be willful. In effect, it blotted out the defense that if appellant disobeyed a lawful order it was not done willfully as appellant claimed he did not hear any order given.

Additionally, it is argued in the brief, and revealed in the record, that at the conclusion of the general charge, counsel for appellant requested the court to instruct the jury as to the legal meaning of several words in the statute. One was to define ''police officer'' as that term is used in the statute. The defense had, at trial, placed in evidence and had argued to the jury, a claim that the officers in question were not within the officers described in the statute since they were university security officers appointed pursuant to R. C. 3345.04 and had authority only on university property and the offense here occurred in a public street of the city of Athens and not on university property. Another term which the court was requested to define was ''lawful order'' and to determine what constituted such as that term is used in the statute.

It has long been the law that where a statute contains doubtful words or phrases they should, upon request, be explained to the jury. See *Simko* v. *Miller, supra.* In view of the issue raised by appellant, as to whether security officers are ''policemen,'' the court should have determined and advised the jury whether such officers are or are not policemen within the meaning of that term in the statute.

Likewise, in view of the issue of whether the officers had authority off university property, it was the duty of the court to define the term "lawful order" rather than, as was done here, leaving it to the jury to make its own determination. It is not a term of ordinary meaning with which the jury, composed of laymen, from their own knowledge would be familiar, nor one within their competence to determine. Inasmuch as I have concluded the judgment below should be reversed, I do not reach or pass upon the question, not raised by appellant by brief or argument, as to the propriety of the assumption of revisionary authority as to sentence for the reason "the sentence is much greater than the proper protection of society demands."

I would reverse.