### N. WEEKES ET AL. V. CITY OF GALVESTON.

Decided April 27, 1899.

**1.   Ultra Vires—Lease by City of Lands Held in Trust for Public.**

A lease to a private individual of a large island forming part of the harbor of Galveston City, and of great value for the construction of docks, sea walls, and wharves, which it was evidently the intention of the Legislature that granted it to the city should be held in trust for public use, such lease being for a grossly inadequate rental and for a period of twenty-five years, with privilege of another like period, is ultra vires and void.

**2.   Constitutional Law—Legislative Power.**

The joint resolution of the Legislature of March 8, 1879, declaring that Pelican Island, theretofore granted to the city of Galveston by Act of February 2, 1856, shall not be subject to attachment, execution, or other judicial process, and that the city shall not have power to transfer the title to the same, is a valid limitation upon the power and dominion of the city over that island, restricting its control thereof to public uses, and did not impair the obligation of contracts or deprive of property without due process of law.

**3.   Same—Joint Resolution—Title of Act—Enacting Clause.**

Such joint resolution, not being an amendment of the Act of February 2, 1856, was not required to refer to the title of that act by section 36 of article 3 of the Constitution, nor was it subject to the requirement in sections 29 and 30 of that article, that all legislative bills shall have an enacting clause.

**4.  Fraud—Violation of Trust—Inadequacy of Consideration.**

The great inadequacy of the consideration received by a city for a lease, coupled with the fact that the dealings of the lessee were not with the real owners of the property, which was an island held in trust by the city for the public, brands the lease as fraudulent in the eyes of the law, although no actual fraud is found in connection therewith.

**5.  Void Lease by City—Its Liability to Assignee of Lease and for Costs.**

The city having received no part of the amount paid by another for an assignment of the void lease to himself, was not liable therefor, nor should it have been taxed with one-half the costs of the action brought by it to cancel the lease.

APPEAL from Galveston. Tried below before Hon. WILLIAM H. STEWART.

*Hume & Kleberg, Maco Stewart,* and *W. M. Jerdone,* for appellants.

*R. Waverley Smith,* City Attorney, for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—By virtue of a resolution of the council of the city of Galveston, of the 18th of June, 1894, the mayor of the city and Robert Shaw entered into the following contract:

"This contract, made and entered into the 29th day of June, 1894, between the city of Galveston, a municipal corporation, incorporated under the laws of the State of Texas, of Galveston County, Texas, acting in this behalf by and through A. W. Fly, mayor of said city of Galveston, and by virtue of a resolution passed and adopted by the city council of the said city of Galveston at a regular meeting thereof held on the 18th day of June, 1894, of the first part, and Robert Shaw, of Galveston County, Texas, of the second part, witnesseth:

"First.  The said party of the first part doth hereby grant, demise, lease, and farm-let unto the said Robert Shaw, his heirs and assigns, for the period of twenty-five (25) years commencing on the 29th day of June, 1894, the following described property and premises situated in the county of Galveston and State of Texas, that certain parcel or tract of land known and described on the maps of Galveston County as Pelican Island, and the land adjacent thereto usually covered with shallow water and commonly called and designated as 'Flats,' said Pelican Island and flats being the land heretofore ceded, granted, and conveyed to the city of Galveston by the State of Texas, said island and flats lying north of the channel of Galveston Bay running in front and north of the city of Galveston, except so much of said island and flats as have been released and quitclaimed unto the State of Texas by the city of Galveston as described in a certain quitclaim deed recorded in Book 130, page 30 of the deed records of said county of Galveston, Texas, and at the termination of the said period of twenty-five years it is hereby especially agreed between the said parties of the first and second parts that the said party of the second part, his heirs and assigns, shall have the privilege of renewing this lease for a further period of twenty-five (25) years from the date of the termination hereof.

"Second.   For and in consideration of the above premises the party of the second part agrees to pay to the party of the first part the annual rent of $25, to be paid annually in advance, and the rent for the first year having been paid to the party of the first part by the party of the second part, the receipt thereof is hereby acknowledged.

"Third.   The party of the second part hereby agrees·not to maintain, transact, carry on, or cause, or allow to be maintained, transacted, or carried on, any business on said property that may be contrary to the charter and ordinances of said city or contrary to the laws of the State of Texas.

"Fourth.   Should there at any time be any default in the payment of any rent due or in any of the covenants herein contained, then it shall be lawful for the party of the first part to re-enter the said premises and remove all persons therefrom without prejudice to any legal remedies which may be used for the collection of rent, all and every claim for damages for or by reason or said re-entry being hereby expressly waived.

"Fifth.   At the expiration of this lease, unless the party of the second part, his heirs or assigns, avail themselves of the privilege of the renewal hereof, the party of the second part agrees to quit and surrender the said premises in as good state and condition as a reasonable use and wear thereof will permit.

"Sixth.   It is expressly agreed and understood by and between the parties hereto that the party of the first part have and by his contract has a valid first lien upon any and all the goods, furniture, chattels, or property of any description belonging to the party of the second part as a security for the payment of all rent due or to become due, and any and all exemption laws in force in this State by which said property might be held are hereby expressly waived."

This contract was duly signed and witnessed, and two other instruments amendatory and explanatory of it were subsequently executed between the parties; and on May 2, 1898, this suit was instituted by the attorney for the appellee in obedience to a resolution of its council adopted January 17, 1898, against the appellants, to whom the lessee Shaw had assigned said contracts, to cancel and annul the same, and for removal of cloud from appellee's title, and for the recovery of the premises from possession of appellants.   The appellants answered by general and special demurrers, and general denial, and upon trial of the cause by the judge of the court without a jury, judgment was rendered annulling the contracts of lease, and restoring the property to the possession of the appellee, with a judgment for appellants against appellee for the rents paid by them to the city collector, with interest on same; and also for $500, the alleged consideration for the assignment of the lease by Shaw to appellants, and that the cost of the suit be paid equally by plaintiff and defendants.   From this judgment the defendants have appealed to this court, and the plaintiff has made cross-assignments of error.

The numerous assignments presented in the brief for appellants, and discussed by counsel with much learning and ability, need not be dis-

cussed seriatim by us, for the case was tried by the judge alone, and if his rulings upon the exceptions to the pleadings, and in the admission of evidence over the objections of the defendants were in part erroneous, if the judgment canceling and holding void the contracts of lease sought to be annulled by the appellee, be such as should have been rendered, it must be affirmed, and we will therefore proceed to inquire if the judgment be authorized by the law under the pleadings, and the facts adduced in evidence.

The validity or invalidity of the lease involves the interpretation of the Act of the Legislature of Texas passed February 2, 1856, granting Pelican Island to the city of Galveston. If that act conveyed to the city a title in fee simple, without limitation or trust, as its language might import, that is to say, if the Legislature intended to convey the island to the city for its municipal or private uses, then the lease in question should be upheld, unless, as is insisted by appellee, the inadequacy of the consideration for the lease demonstrates the contract to be fraudulent, and that the assignees of the lease knew of, or at least were chargeable with notice of, the fraud when they took the assignment; or unless the joint resolution of the senate and house of representatives of Texas, passed on the 8th of March, 1879, could and did impose and ingraft a public trust upon the property. In construing the Act of February 2, 1856, we should look beyond the words of the statute to ascertain the intent and purpose of the Legislature. That municipal corporations may acquire and hold property for public as well as for corporate uses, seems to be well settled, and when the grant is for public purposes, duties are imposed upon the grantee which can neither be ignored nor their performance delegated to others than the governing power of the corporation. Dill. on Mun. Corp., sec. 96, and authorities there cited; City of Corpus Christi v. Central Wharf Co., 8 Texas Civ. App., 94.

Pelican Island and its adjuncts, known as Pelican flats, constitute, for a large portion of the distance between the gulf and the western shore of the bay, the northern boundary of Galveston harbor. It stretches for several miles from east to west, its southern shore being nearly parallel with the northern shore of Galveston Island; and from its position and its availability for the construction of sea-walls, wharves, and docks, is of inestimable value for the preservation and improvement of the harbor, and for expanding and increasing the maritime accommodations and facilities of the port of Galveston. The people of the entire State are interested in the commercial and maritime improvement of this port, and the policy of the State has been to foster this interest from the foundation of the city. This is evidenced by the grant from Texas to Menard and his associates to the lands upon the bay shore, situated between the low and high tide, and much of which is now occupied by the wharves of the Galveston City Company, the successor of Menard and his tenants in common; and it has also long been the policy of the State not to grant to individuals the island in its bays and along the gulf shore. For

years, as is well known, these islands were reserved from location by the holders of land certificates, who were authorized by such certificates to appropriate portions of the public domain.

All these matters, considered with the further fact that in February, 1856, when the act granting Pelican Island was passed, the island was beyond the jurisdictional limits of the city, and was not essential, if indeed available, for municipal purposes, are sufficient to authorize the conclusion that the purpose and the intention of the Legislature, by the Act of February 2, 1856, was to convey the island to the city for public, and not for merely private uses, and that the property is held by the city in trust for the use and benefit of its citizens, and for the benefit of the public at large. But if we are in error in thus interpreting this act, we are of the opinion that the joint resolution of the Legislature of March 8, 1879, does, and as we think, without violation of any provision of the State or Federal Constitution, limit the power and dominion of the grantee over the property for public purposes, when it declares that "said property shall not be subject to attachment, execution, or other judicial process for debt or debts of said city; nor shall said corporation have the power to transfer the title to the same to any person or corporation whatever." If the island was the private property of the city it was surely not the intention of the Legislature to declare it should not be subject to debts of the city previously contracted and then existing; such purpose should not be imputed to the Legislature unless evidenced by clear and explicit language.

In support of their insistence that the Legislature is without power to attach a condition to an unconditioned grant of land made to a public corporation, or to otherwise change, abridge, or modify the absolute title and power of use and disposition invested by such grant, counsel, among other authorities, cite the cases of Milam County v. Bateman, 54 Texas, 153. In that case the Supreme Court decided that it was not in the power of the Legislature to divest title from a county to lands which had been granted it by the State for school purposes. The joint resolution of March, 1879, does not undertake to divest the title to Pelican Island; it affirms the title, but inhibits its alienation by the city, and also exempts the property from liability for the debts of the city. In the case of Baker v. Dunning, 77 Texas, 28, it was held that the Legislature could require a county to sell its school lands, when put upon the market, to actual settlers upon the land, if they desired to purchase, in preference to all other bidders; and a sale made to another by the county, without evidence that the county or its vendee even knew that there was a settler upon the land, was held to be imperative as to the settler, who after the sale by the county, made a tender to it, and to its vendee, of an amount of money sufficient to pay for 160 acres at the price per acre for which the entire body of lands, a league or more, had been sold. If the act requiring a county to sell its lands, in preference to other bidders, to settlers, and in small quantities, and for the same price per acre for which it could sell to one bidder all of its lands, is not violative of

section 16, article 1, of the bill of rights of the Constitution of this State, inhibiting the impairment of a contract by legislation; or of section 10 of article 1 of the Federal Constitution, inhibiting the deprivation of property without due process of law, it would seem that the joint resolution of March 8, 1879, should not be held to violate either of these constitutional limitations upon the legislative power of the State.

There is not wanting authority for the doctrine that these sections of the State and Federal Constitutions are without application to acts of the Legislature respecting the powers, rights, and property of municipal and public corporations, and that the authority of the Legislature over such corporations is quite without limit; and such doctrine seems to be consistent with sound reason, since it is by the will of the Legislature that these corporations exist. But without giving our assent to the construction that these corporations hold their property and their powers as they do their existence, the weight of authority seems to be that there may be rights in such corporations which are beyond destruction by the Legislature, though not beyond reasonable and legislative authority and control. Dill. on Mun. Corp., sec. 68. We are of the opinion that the authority exercised by the Legislature in the resolution of 1879, in respect to the property granted the city of Galveston by the Act of February, 1856, was reasonable and legitimate. But it is insisted, by reason of sections 29 and 30 of article 3 of the Constitution of the State, the joint resolutions of 1879 are ineffectual to repeal, abridge, enlarge, or amend the Act of February 2, 1856; in other words, that such resolutions have not the force and effect of law. The Constitution recognizes two modes by which the will and purpose of the Legislature may be declared; and such will, when expressed in either one or the other of these modes, has the force and effect of law, and is imperative upon the courts, and such resolutions vest or divest title to property and may enlarge or restrict an existing law. Sections 29 and 30 of article 3 are applicable to laws passed by bills, but not to such as are created by joint resolutions. Suth. Stat. Const., sec. 61; State v. Delesdenier, 7 Texas, 76.

The joint resolutions of March, 1879, do not purport to be an amendment of the Act of February 2, 1856, nor are they in fact an amendment in the sense in which that term is used in section 36 of article 3 of the Constitution. They are in part another and separate expression of the will and purpose of the Legislature touching the subject matter of the Act of 1856, and the two, being construed each in connection with the other, constitute the title of the city of Galveston to Pelican Island and Pelican Flats, and under that title the city of Galveston holds the property in trust for the public, and is charged by law with the duty of administering the trust through the exercise of its legislative and governmental powers upon the property, as the needs and exigencies of the harbor and port may from time to time demand.

These powers, as we have seen, can not be delegated, nor can the city government avoid its duty to the public by placing the property out of its possession and beyond its control. By the lease made to the appellants,

they are given possession of Pelican Island and its flats, to be by them occupied and used for the period of twenty-five years, with privilege of renewing the lease for the like period, and upon the same terms; this possession and use of the property to be without interference or control of the city government. It is true the lease provides that the property shall not be used to the injury of the harbor, and that no business shall be carried on by the lessees, nor will they permit any others to carry on any business upon the island in violation of the laws of the State or the ordinances of the city. But these restraints upon the rights and powers of the lessees are only those under which every citizen of the city holds and enjoys his property. Thus practically for half a century the city, by its contract, has voluntarily abdicated its office of trustee for the public, and obligated itself to suspend for the same period of time all exercise of its legislative and administrative powers of government as regards this island, other than such as it may exercise in respect to the property of any citizen. Such action by the council must be held to be ultra vires; and without deciding that there could not be a valid lease made of this property, we declare the one under consideration to be unauthorized and illegal, and the judgment of the lower court canceling and vacating the same to be correct. Dill. on Mun. Corp., sec. 97; City of Corpus Christi v. Central Wharf Co., 8 Texas Civ. App., 94; McDonald v. Railway, 60 Texas, 591; Waterbury v. City of Laredo, 68 Texas, 576.

As to the second ground upon which appellee sought to have the contracts of lease avoided and annulled, our conclusion is, that while the petition does not charge specific acts of fraud against any member of the city council, or the lessee or his assignees, and while the evidence does not warrant a finding that there was actual fraud committed by anyone connected with the lease, the very great inadequacy of the consideration received by the city for the lease, coupled with the fact that the dealings of the lessee were not with the real owners of the property, but with those who were trustees for the owner, the public, brands the contract as fraudulent in the eyes of the law. There may have been incompetent, and perhaps irrelevant, evidence admitted for the plaintiff over objections from the defendants, but there was competent and relevant evidence amply sufficient to warrant a finding by the court, that the sum of $25 was grossly and shockingly inadequate as annual rent for the property. Pom. Eq. Jur., sec. 927; Tied. Eq. Jur., 229; Strong Eq. Jur.; Macoupin Co. v. People, 58 Ill., 195; Madison County v. People, 58 Ill., 457; Byers v. Surget, 19 How., 303.

The cross-assignments of the appellee are, we think, well taken. Neither law nor equity authorized a judgment for the appellants for the sum alleged to have been paid by them for the assignment of the lease to them by Shaw. The appellee received no part of the money paid by appellants to Shaw, and appellants have no claims upon the appellee or any of this $500. Nor should the court have divided the costs of the suit between the parties. It follows from what we have said that the judgment will be reformed and here rendered, that the contracts of lease set

out in the petition be canceled and held for nought, and that the property sued for be restored to the possession of the appellee, and that the writ of possession issue for this purpose, and that appellee pay to the appellants the sum of $75 paid by them into the treasury of the appellee, in compliance with said contract of lease, with interest on said money at 6 per centum per annum from dates of payment, and that appellee recover all costs of suit in this and in the lower court.

*Reformed and rendered.*

Writ of error refused.