Carlos WAGNER et al., Appellants,

v.

CITY OF SAN ANTONIO, Appellee.

No. 6635.

Court of Civil Appeals of Texas,
El Paso.

Nov. 9, 1977.

Rehearing Denied Nov. 28, 1977.

Appleberry, Deyeso & Haase, Inc., Frederick J. Deyeso, San Antonio, for appellants.

James M. Parker, City Atty., Jackson C. Hubbard, Asst. City Atty., San Antonio, for appellee.

## OPINION

WARD, Justice.

The Plaintiffs, Appellants, as landowners and irrigators sued the City of San Antonio to recover damages for breach of contract occurring when the City stopped transporting sewage effluent from its Rilling Road Sewage Treatment Plant through a long established open canal. Trial was to a jury, but upon the termination of the Irrigators' case the trial Court granted the City's motion for an instructed verdict and entered judgment for the City. The Plaintiffs/Irrigators present points that a breach of their contract has occurred; that the City has taken or damaged a valuable property right associated with their lands without adequate compensation being made in violation of Article 1, Sec. 17, of the Texas Constitution; and that the City has benefited through an inequitable and unjust enrichment. We affirm.

At least since the turn of the century, the City of San Antonio has by contract turned certain effluents from its sewage system into Mitchell Lake, the effluent being used by neighboring property owners for the purpose of irrigation. A concise presentment of the factual background to this case is made by the City in its brief as follows: (1) The original controversy is revealed in the case of *City of San Antonio v. San Antonio Irrigation Company*, 118 Tex. 154, 12 S.W.2d 546 (1929). (2) On May 30, 1932,

the City through its City Commissioners duly passed and approved "an ordinance authorizing the settlement of the controversy with the San Antonio Irrigation Company and creating a contract with Charlotte Cassin, Sidney J. Brooks and Cora Ogden for an easement on Mitchell Lake and other property." This ordinance contract was accepted and executed on May 31, 1932, and all Plaintiffs/Irrigators are successors in interest to the San Antonio Irrigation Company and the individual parties to that 1932 ordinance contract. (3) From and after 1932 until October 1, 1970, the City delivered sewage, untreated or treated, from the "sewer farm" and later from the City's Rilling Road Sewage Treatment Plant into the open ditch or canal leading to Mitchell Lake, and the Irrigators and their predecessors in title took water from the ditch or canal and the lake as their needs required. (4) In 1962, at a cost in excess of $300,-000.00, the City completed construction of an underground pipeline from the Rilling Road Sewage Treatment Plant to Mitchell Lake—a distance in excess of two miles. (5) On August 27, 1963, the City purchased fee title to Mitchell Lake together with an adjacent 9.54 acres but subject to the provisions of the 1932 ordinance contract. (6) On August 21, 1970, the City was enjoined from transporting effluent from the Rilling Road Sewage Treatment Plant to Mitchell Lake through the open ditch or canal unless that portion adjacent to Villa Coronado Subdivision was converted into a closed conduit. Plaintiffs/Irrigators were all parties to the suit in which this injunction was entered against the City. (7) Since October, 1970, all discharges from the Rilling Road Sewage Treatment Plant to Mitchell Lake have been made through the underground pipeline constructed in 1962. (8) Since October, 1970, when the City ceased to discharge any effluent through the open canal, all of the Plaintiffs/Irrigators, with one exception, have irrigated some portion of their lands at one time or another from Mitchell Lake.

The City's position is that it is ready, willing, and able to provide and to have available to the Plaintiffs/Irrigators the effluent for irrigation purposes from the underground pipeline constructed in 1962 or the Mitchell Lake reservoir and is in compliance with the terms and conditions of the 1932 ordinance contract. The Plaintiffs, conceding that they have the right to take the effluent from either the underground pipeline or from Mitchell Lake, contend and show that neither of these methods of obtaining effluent is economically feasible for their farms, while the taking of the effluent from the abandoned open canal is an economic necessity due to its elevation and its proximity to their respective properties and existing ditches.

The primary issue for determination is whether there has been any breach by the City of the 1932 ordinance contract. By its terms, that contract rescinded the former contract dated 1901, referred to in the opinion of the *City of San Antonio v. San Antonio Irrigation Company,* supra, and settled that suit. The ordinance contract then granted to the City of San Antonio an easement to make and maintain the open canal to Mitchell Lake and to make and maintain the reservoir at Mitchell Lake for all sewage which the City might convey to it. The contract provided that the Plaintiffs' predecessors in interest were granted a sewage water right of 10,000 acre feet a year from the then existing outfall sewer and/or any outfall sewer that might be built and which could be taken from the canals or from Mitchell Lake reservoir until September 11, 2001, the same to be taken by Plaintiffs' predecessors from the canals and the reservoir at places to be chosen by them, the contract providing that they were not obligated to take any sewage except such part as they might choose to demand.

Of controlling importance and determining the issue is Paragraph 41 of that ordinance contract. That Paragraph provides as follows:

"This grant shall never mature into a vested right which would require compensation to the grantees, their heirs, successors or assigns, if the governing body of the City requires a change in the method of sewage disposal, which would cause

the City to abandon the use of the canals and of the reservoir, and dispose of the sewage at some other place, and deprive the grantees of the sewage, and terminate this contract."

As seen, the governing body of the City required a change in the method of sewage disposal which caused the City to abandon the use of the open canal. The Plaintiffs argue that the City is liable, however, because the change in the method of sewage disposal caused abandonment of only a portion as opposed to the entire system. To read that contention into the contract would be to require that the City close the open ditch adjacent to the Villa Coronado Subdivision and convert it into a closed conduit at a considerable expense. To the contrary, there is no requirement in the contract for the City to spend public funds to alter or modify its sewer facilities for the protection and preservation of the Irrigators' private interest. Also, to read the Plaintiffs' position into the contract would be to read an implied obligation on the part of the City to finance at public expense the avoidance of any future event unforeseen and uncontemplated in 1932 which might have a detrimental effect on the Irrigators' rights.

The City, as a political subdivision of the State, could not contract or surrender away its police or governmental powers. To follow the contention of the Plaintiffs would be to read the contract in a way which would inhibit or restrict the City in its free exercise of those governmental powers. *Clear Lake City Water Authority v. Clear Lake Utilities Company*, 549 S.W.2d 385 (Tex.1977). We hold that the City, under the terms of the ordinance contract, could cease to discharge effluent through the open canal and use the underground pipeline constructed in 1962 without having committed a breach of its contract. *Stevenson v. City of Abilene*, 67 S.W.2d 645 (Tex.Civ.App.—Eastland 1934, writ ref'd). The Plaintiffs' first point contending to the contrary is overruled.

Since we have determined that there was no breach of contract, the Plaintiffs' two remaining points, being premised that a breach of contract occurred, present no error and are overruled. The judgment of the trial Court is affirmed.