RIVER ROAD NEIGHBORHOOD ASSOCIATION, et al.,
Appellants,

v.

SOUTH TEXAS SPORTS, et al., Appellees.

No. 04–84–00206–CV.

Court of Appeals of Texas,
San Antonio.

March 5, 1986.

Rehearing Denied Dec. 10, 1986.

Harvey L. Hardy, Jackson C. Hubbard, Timothy Patton, Groce, Locke & Hebdon, San Antonio, for appellants.

Marynell Maloney, Maloney & Maloney, Anthony Nicholas, Manuel Lopez, Phil Hardberger, W.L. Matthews, Donald J. Walheim, Schulman, Walheim & Beck, San Antonio, for appellees.

Before CADENA, C.J., and BUTTS, and CANTU, JJ.

## OPINION

CADENA, Chief Justice.

This is an appeal from an instructed verdict upholding the validity of a lease executed by defendant, San Antonio Independent School District (District), purporting to lease certain property owned by District consisting of Alamo Stadium and other tracts of land in the vicinity of the stadium, to defendant, South Texas Sports, Inc. (STS).

The suit challenging the validity of the lease was filed by (1) River Road Neighborhood Association (Association), a Texas non-profit corporation,[1] whose members live in close proximity to Alamo Stadium and are residents within, and taxpayers of, the district; (2) ten individuals who reside within and pay taxes to, the District and the City of San Antonio; and (3) the City of San Antonio (City).

Plaintiffs, Association and the ten individuals, seek reversal of the judgment on grounds[2] that (1) the lease is ultra vires in that it surrenders control over school property to a private corporation for private purposes for an "unconscionable term" of 50 years; (2) the lease is for an inadequate consideration since it deprives District of the right to collect rent unless it spend in excess of 20 million dollars in expanding the seating capacity of Alamo Stadium from approximately 22,000 to 62,000; (3) the lease instrument does not adequately describe the premises being leased; and (4) the lease was approved at a meeting of District's Board of Trustees which was held in violation of the Open Meetings Act, TEX.REV.CIV.STAT.ANN. art. 6252-17 (Vernon Supp.1986). City challenges the lease on grounds that it violates the covenants, conditions and restrictions contained in the conveyance by which the land on which Alamo Stadium is located was conveyed by City to District and that it is ultra vires.

Alamo Stadium has been primarily used as the site for football games and other athletic contests involving schools of the District. STS holds a franchise from the United States Football League and operates a professional football team known as the San Antonio Gunslingers, which plays its home games at the stadium.

Execution of the lease was approved by District's Board of Trustees at an emergency meeting held on May 31, 1983. The notice of the May 31 meeting was posted less than 72 hours before the meeting was convened. Association and the individual plaintiffs contend that the lease must be declared void because of lack of compliance with the notice provisions of the Open Meetings Act.

The following provisions of the statute are pertinent:

Sec. 3A. (a) Written notice of the date, hour, place, and subject of each meeting held by a governmental body shall be given before the meeting as prescribed by this section, and any action taken by a governmental body at a meeting on a subject which was not stated on the agenda in the notice posted for such meeting is voidable....

\*     \*     \*     \*     \*     \*

(e) A school district shall have a notice posted on a bulletin board located at a place convenient to the public in its central administrative office and shall give notice by telephone or telegraph to any news media requesting such notice and consenting to pay any and all expenses incurred by the school district in providing special notice.

\*     \*     \*     \*     \*     \*

(h) Notice of a meeting must be posted in a place readily accessible to the general public at all times for at least 72 hours preceding the scheduled time of the meeting,.... In case of emergency or urgent public necessity, which

---

1. The purpose of plaintiff association is to represent the interests of its members "in defense of the River Road Neighborhood, their homes and quality of life."

2. Defendants do not challenge the holding of the trial court that all plaintiffs have standing to pursue their legal claims on appeal.

shall be expressed in the notice, it shall be sufficient if the notice is posted two hours before the meeting is convened. TEX.CIV.STAT.ANN. art. 6252–17, § 3A (Vernon Supp.1986).

We reject the contention that the notice is insufficient because it fails to describe the nature of the emergency which excused compliance with the requirement of 72 hours' notice. The statute simply provides that notice of less than 72 hours is sufficient "in case of an emergency or urgent public necessity, which shall be stated in the notice...." A fair construction of the language yields the conclusion that all that is required is that the notice state that the meeting is required by an emergency or urgent public necessity, thus explaining the failure to give the 72 hours' notice which would otherwise be required. There is no requirement that the nature of the emergency be set out in the notice.

The statute requires that the notice state not only the date, hour and place of the meeting, but also the "subject" of the meeting. We sustain the contention that the notice did not adequately state the subject or purpose of the meeting, since it merely stated that the lease of Alamo Stadium would be "discussed" and gave no indication that any action would be taken.

Defendants, asserting that substantial, rather than literal, compliance with the notice provisions is all that is required, argue that notice that there would be discussion of the lease was sufficient to alert readers of the notice that action approving the lease might be taken at the meeting. Defendant's argument is based on several cases, some of which indicate that substantial compliance is sufficient.

In *Lower Colorado River Authority v. City of San Marcos*, 523 S.W.2d 641, 646 (Tex.1975), the notice stated that the governing body would consider matters concerning the operation of the River Authority, "including the ratification of the prior action of the Board taken on October 19, 1972, in response [sic] to changes in electric power rates...." The Supreme Court, while noting that the notice was not as

clear as it might be, concluded that "it would alert a reader to the fact that some action would be considered with respect to charges for electric power...." *Id.* There is no reason to quarrel with this conclusion, since the recitation concerning "ratification" of the prior action of the Board clearly referred to action, rather than mere discussion. The opinion nowhere states that substantial compliance with the notice provisions is all that is required.

In *Santos v. Guerra*, 570 S.W.2d 437, 439 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.), the notice stated that the purpose of the meeting was to "Discuss Road and Budget Department personnel matters (executive session, if needed)." *Id.* at 438. At the meeting the Commissioner's Court terminated the employment of Santos. This Court, after observing that the notice "was not as detailed as it might have been," concluded that "under all of the circumstances present in this case, it would alert a reader to the fact that some action would be taken concerning appellant's job performance," and that "under the facts of this case, substantial compliance with our Open Meetings Law was established as a matter of law." *Id.* at 440. It is difficult to understand how notice that "Road and Budget Department personnel matters" would be discussed can fairly be said to be sufficient to alert a particular employee "to the fact that some action would be taken concerning [that particular employee's] job performance." *Id.* Under such a "substantial compliance" rule, notice that the governing body would "discuss" the budget would be sufficient to alert all employees of the governmental unit that their employment might be terminated, since there is a clear relationship between authorized expenditures and number of authorized employees.

The *Santos* opinion makes it clear that the conclusion is based on "all of the circumstances present" in that case, and that substantial compliance was established "under the facts" of that case. The "circumstances" and "facts" mentioned in the

opinion were that Santos attended, and actively participated, in the meeting and that several persons attended and spoke in his favor. Under these facts and circumstances it is clear that the notice was sufficient to alert Santos and others that he might be fired.

*McConnell v. Alamo Heights Independent School District,* 576 S.W.2d 470 (Tex. Civ.App.—San Antonio 1978, writ ref'd n.r.e), involved the firing of a school teacher. The teacher's complaint concerned the sufficiency of the notice of a meeting held on January 26. As pointed out in this Court's opinion, the teacher's employment was not terminated at that meeting, so that the sufficiency of the notice was irrelevant and the discussion of its sufficiency is dictum.

In *Burton v. Ferrill,* 531 S.W.2d 197, 200 (Tex.Civ.App.—Eastland 1975, writ dism'd), the notice stated that the purpose of the meeting was "organizational procedures in order calling confirmation and tax election." The Court merely said that the notice "would alert a person that action would be considered with respect to calling an election." *Id.* The conclusion seems correct, since the notice referred to provisions in an order calling an election. In *Lipscomb v. Independent School District v. County School Trustees,* 498 S.W.2d 364, 366 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.) the notice, as set out in the opinion, represented a literal compliance with the notice requirements.

The opinion in *Aguilar v. City of El Paso,* 594 S.W.2d 191, 194 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.), does not contain the wording of the notice. The Court merely said that the City posted its agenda "indicating the recommendation that the City enter into" the contract in question, adding that there was no violation because the statute merely required that the City "post notice of the subject upon which action was to be taken."

*Stelzer v. Huddleston,* 526 S.W.2d 710 (Tex.Civ.App.—Tyler 1975, writ dism'd), appears to be the case which lends most support to defendants' contention. The meeting involved was not an emergency meeting, so the statutory requirement of 72 hours' notice by posting on the bulletin board at the school district's administrative office was applicable. School officials notified the newspaper that a meeting would be held at 7:30 p.m. on March 26, and the newspaper, on March 21, carried a story telling of the meeting. A notice was posted at the courthouse on March 22. The superintendent posted a notice on the bulletin board of the school where the meeting was to be held 15 hours before the date of the meeting, and 34 hours before the meeting began. *Id.* at 712. The court held that there had been substantial compliance with the statute, saying:

> Even though provisions of the statute are mandatory, we hold that the 'notice' provisions of the statute are subject to the substantial compliance rule. *Federal Crude Oil Co. v. Yount-Lee Co.,* 122 Tex. 21, 52 S.W.2d 56, 61 (1932); *Whiteside v. Brown,* 214 S.W.2d 844, 847 (Tex. Civ.App., Austin 1948, dism'd); *State v. Crawford,* 269 S.W.2d 536 (Tex.Civ.App., El Paso, 1954, n.w.h.); *Lipscomb Ind. Sch. Dist. v. County School Trustees,* 498 S.W.2d 364 (Tex.Civ.App., Amarillo, 1973, ref. n.r.e.). The rationale of the substantial compliance rule is that while the notice provisions in statutes are mandatory, they are essentially procedural; that rigid adherence to such a procedural mandate will not be required if it is clear that a substantial compliance provides realistic fulfillment of the purpose for which the mandate was incorporated in the statute. A determination of the applicability of substantial compliance will, of course, depend on the circumstances of each case.
>
> Upon applying the foregoing rules to the facts and circumstances of the present case showing a partial compliance with the notice provision of the statute, we are of the opinion that the objective sought by the 'notice' provision has been fully attained and, as a practical matter, the mandate of the statute was fulfilled. There can be no doubt that a

large segment of the public was informed of the March 26th meeting by the news media more than 72 hours before the day of the meeting. This, together with the notices posted on the school bulletin board for approximately 15 hours before the day of the meeting and approximately 34 hours before the meeting commenced, amounted to a substantial compliance.

*Id.* at 713.

Not all courts have gone to great lengths in order to avoid setting aside the actions of governmental bodies because of failure to comply with the notice provisions of the law. In *Cameron County Good Government League v. Ramon*, 619 S.W.2d 224, 231 (Tex.Civ.App.—Beaumont 1981, writ ref'd n.r.e.), the Court was not "impressed with the argument" that substantial compliance with the statute was sufficient, holding that the "Legislature intended for a literal compliance" with the notice provisions of the statute. *Ramon* was cited with approval in *Garcia v. City of Kingsville*, 641 S.W.2d 339, 341 (Tex.App.—Corpus Christi 1982, no writ). Neither *Ramon* nor *Garcia* involved the portion of the statute which requires notice of the purpose of the meeting. Both cases held that the determination by a government body that an emergency existed which excused compliance with the requirement of 72 hours' notice was subject to judicial review.

In *Thornton v. Smith County*, 690 S.W.2d 949 (Tex.App.—Tyler 1985), *writ ref'd n.r.e. per curiam*, 690 S.W.2d 949 (1985), the same court which went to such great lengths to uphold the action of the school board in *Stelzer v. Huddleston*, *supra*, after noting its opinion in that case and the holdings in *McConnell v. Alamo Heights I.S.D.*, *supra; Santos v. Guerra, supra; Lipscomb I.S.D. v. County School Trustees, supra,* followed the dictum in *Cameron County Good Government League v. Ramon, supra,* holding that in view of the amendments to the notice provisions of the statute since its original enactment, literal, and not merely substantial, compliance with the requirements of TEX.

REV.CIV.STAT.ANN. art. 6252–17, § 3A(h) (Vernon Supp.1986) is required. 690 S.W.2d at 953.

The Supreme Court per curiam opinion refusing the application for writ of error, n.r.e., in *Thornton*, stated its agreement with the Tyler Court's holding that the statutory provision that notice of a meeting must be posted in a place readily accessible to the public at all times requires literal compliance.

Although *Thornton* involved the application of section 3A(h) and the requirement that the notice state the subject of the meeting is found in section 3A(a), it can be argued that the *Thornton* holding is based on the conclusion that the amendatory actions of the Legislature show an intent to strengthen the notice requirements generally to insure that the purpose of the statute is achieved and the public will be informed concerning the transaction of public business. The use of vague language, which must be interpreted and then reinforced by resort to the substantial compliance rule in order to avoid a finding of illegal conduct, does not tend to promote the achievement of the statutory purpose, since it requires the public to guess as to the meaning of the language. There is no reason to believe that the firmament will not remain securely in place if literal compliance with notice provisions is required.

In any event, even if the *Stelzer* objective of protecting government bodies is accepted, it should be borne in mind that the *Stelzer* opinion was based on the notion that substantial compliance is present when the purpose for which the notice provision was inserted has been fulfilled, or the objective sought by the notice provision has been obtained. *Stelzer v. Huddleston*, 526 S.W.2d at 713.

The question of whether the government body has substantially complied with the statutory requirements must be determined on a case-by-case basis involving an analysis of the statute and the evidence before the court. As already noted, in *Santos v. Guerra, supra,* this Court based its conclusion on a consideration of all of the facts

before the Court, including the fact that the complaining party clearly understood that the governing body would consider termination of his employment and he was present at the meeting. No such circumstances are present in this case. All of the facts reflected by the record support the conclusion that the notice in this case was not sufficient to alert the public that execution of the lease might be approved at the May 31 "emergency" meeting.

The testimony is uncontradicted that, of the various emergency meetings which were called in connection with the Alamo Stadium lease, only the notice of the May 31 meeting limited the purpose of the meeting to "discussion." In the case of the other four emergency meetings, the purpose was described as "discussion/action." The superintendent testified that he could not explain why the word "action" was omitted from the notice. The record further reveals that, insofar as the San Antonio Independent School District is concerned, the distinction between "discussion/action" and "merely discussion" was well understood. If the notice limited the purpose of the meeting to discussion, this meant exactly what is said—no action would be taken. If the possibility of action, as distinguished from mere discussion, was contemplated, the notice always stated the purpose in terms of "discussion/action."

Considering all of the facts and circumstances present in this case, it can only be concluded that the notice of the May 31 meeting, which described the purpose of the meeting only as "discussion," was deceptive because, in view of the well established custom and practice of the District, it did not alert the public to the fact that action might be taken.

■ Since 72 hours' notice of the meeting was not given, the instructed verdict was proper only if the evidence established, as a matter of law, that an emergency existed which excused compliance with the requirement of 72 hours' notice. The determination by the one member of the school board that an emergency existed is not conclusive. Whether the meeting of May 31 was required by the existence of an emergency is subject to judicial review. *Garcia v. City of Kingsville*, 641 S.W.2d at 341; *Cameron County Good Government League v. Ramon*, 619 S.W.2d at 231.

■ The statute contains no definition of "emergency." However, the term generally refers to an unforeseen combination of circumstances that calls for immediate action; a sudden or unexpected occasion for action. *State v. Perry*, 29 Ohio App.2d 33, 278 N.E.2d 50, 53 (1972). The mere necessity for quick action does not constitute an emergency where the situation calling for such action is one which reasonably should have been anticipated. *State v. Graves*, 119 Vt. 205, 122 A.2d 840, 846 (1956); *cf. Quarles v. McKenzie Public School District*, 325 N.W.2d 662, 669 (N.D.1982). The Texas Supreme Court has said that an emergency is a condition arising suddenly and unexpectedly, not caused by any neglect or omission of the person in question, which calls for immediate action. *Goolsbee v. Texas & N.O.R. Co.*, 150 Tex. 528, 243 S.W.2d 386, 388 (1951).

While the definitions of "emergency" in cases such as those referred to in the preceding paragraph are not conclusive as to the meaning of that term in our open meetings law, they illustrate the meaning of the term in situations where the existence of an emergency is relied on to excuse the failure to act in conformity with standards which otherwise would be applicable. In this case the existence of an emergency is advanced as the excuse for failure to comply with the notice provisions which would have been applicable in the absence of an emergency. The discussions of "emergency" in those cases are at least persuasive.

In this case, the school board knew as early as May 9 that action would have to be taken no later than May 31, assuming that STS was adamant in its insistence that action be taken by that date. Nevertheless, the board failed to take action at meetings held on May 9 and May 20 and, because of graduation schedules, cancelled

the regular meeting which was scheduled to be held on May 23.

Since the need for action on May 31 was brought about by the decisions of the school board not to act at previous meetings which were held after the subject of the lease first surfaced on April 11, it cannot be said, as a matter of law, that an emergency existed on May 31. *See Scatuorchio v. Jersey City Incinerator Authority,* 14 N.J. 72, 100 A.2d 869, 877, 879 (1953). Even after the May 23 regular meeting had been cancelled there was more than sufficient time to comply with the statute and give 72 hours' notice of the May 31 meeting, since, assuming that the May 31 ultimatum would not be withdrawn, school officials knew that action had to be taken, if at all, no later than May 31.

Beginning with the "emergency meeting" called on May 20 for discussion of the lease, all five meetings at which problems connected with the lease were called as emergency meetings. These meetings were held on May 31, July 6 ("Discussion/Action—Proposed Plan for Alamo Stadium"), August 1 ("Discussion/Action Report on meeting with City and South Texas Sports, Inc., officials concerning Alamo Stadium lease"), November 23 ("Discussion/Action Amendment to Lease Agreement Alamo Stadium"). Apparently everything connected with the lease was done under "emergency" conditions.

We also sustain the contention that the instructed verdict was further erroneous because the lease contained no adequate description of the leased premises. The only attempt at description is found in the statement, in Article I of the lease instrument, that District was leasing "that certain tract of land located in Bexar County, Texas, together with all improvements located thereon, such land and improvements being more particularly described and shown on the plot plan attached hereto as Exhibit 'A'."

Exhibit "A" appears to be a map on which eight tracts of land are marked. Alamo Stadium is not shown as one of the tracts being leased.

The problem with Exhibit "A" is that it contains nothing which even attempts to describe the location of the land shown on the map or of the eight tracts of land marked. It does not indicate that the land is in the City of San Antonio, and only the reference to Bexar County in Article I of the lease furnishes a basis for the conclusion that the land is in Bexar County.

It is, of course, proper to attach to a deed or lease a map showing the property conveyed or leased, and such map can be looked to in aid of a defective written description in the instrument. But a map can cure a defective description only if the map contains enough descriptive information which, when considered in connection with the attempted written description in the deed or lease, to make location of the land possible. In this case the lease instrument recites that the land is in Bexar County. The map gives no clue as to the portion of Bexar County in which the land is located. It identifies no streets, highways, streams or other landmarks indicating, even in a general way, the location of the eight tracts of and marked on the map. The result is that, considering the lease instrument and the map together, we can ascertain only that the leased premises are in Bexar County.

Since the lease does not furnish, within itself or by reference to some other existing writing, the means or data by which the leased land can be identified, the lease is invalid for lack of an adequate description. *See U.S. Enterprises, Inc. v. Dauley,* 535 S.W.2d 623 (Tex.1976); *Broaddus v. Grout,* 152 Tex. 398, 258 S.W.2d 308 (1953); *Mainland Savings Association v. Hoffbrau Steak House, Inc.,* 659 S.W.2d 101 (Tex.App.—Houston [14th Dist.] 1983, no writ).

The trial judge stated that location of the leased premises was easily ascertainable because the deed by which the City of San Antonio conveyed the site of what is now Alamo Stadium to District in 1939 was in evidence and contains a metes and bounds description of the land. The prob-

lem with this theory is that the lease contains no reference to the 1939 conveyance. The same is true of the trial judge's remark that the deed from City to District was on record where any person could see it. We do not accept the theory that instruments not referred to in a lease are read into and become a part of the property description merely because they are recorded. The learned trial judge cited no authority supporting the assumption that all recorded instruments are read into a lease, even if the lease contains no reference to them. STS cites no such authority in its brief in this Court.

Defendants contend that the map attached to the lease "affords sufficient clues or keys so that the land can be identified with reasonable certainty." Their brief contains no effort to point out what those "clues or keys" are. Since the eight marked tracts contain no identifying names or numbers which correspond to anything contained in the lease instrument, we find no clues or keys. The absence of written or printed matter which supplies any help as to the name or location of the city block, new city block, subdivision, survey, etc., or even the city, in which the land shown on the map is located cannot constitute a sufficient "key or clue" to make possible the identification or location of the land with reasonable certainty. *See U.S. Enterprises, Inc. v. Dauley, supra,* 535 S.W.2d at 630. The description in the Alamo Stadium lease is even less informative than the description ruled insufficient in *Lubel v. Uptmore,* 680 S.W.2d 518 (Tex.App.—San Antonio 1984, no writ).

■ All plaintiffs contend that the lease is ultra vires because it is a surrender by District of control over property held by it for school purposes.

The lease is for a primary term of 30 years and grants to lessee, STS, the right to extend the term for two additional 10-year periods. The lease is, thus, for a minimum period of 30 years, and if STS chooses to exercise its options, for an additional 20 years.

The lease gives STS the right to the "exclusive use" of the leased premises for "all lawful purposes," without paying until at least February 1, 1986.

If District elects, by January 1, 1985, to exercise its option to expand the seating capacity by adding 40,000 seats, the right of STS to use Alamo Stadium will be limited to use as the site for professional football games. Should District elect to spend more than 20 million dollars to enlarge the stadium at its own expense, the lease contains provisions for the payment of rent by STS according to formulas set out in the instrument. If District elects not to increase the seating capacity of the stadium, STS is given the right but is under no obligation, to build the additional seats at its own expense.

If District chooses not to enlarge the stadium then STS will have the right to exclusive use of the stadium rent-free, for all lawful purposes until the lease terminates, except as provided in section 6.02 of the lease.

According to section 6.02, District reserves the right to use the leased premises "on an as needed basis in connection with legitimate San Antonio Independent School District Events." This section further provides that District and STS "agree to use their best efforts to resolve any scheduling conflicts which may arise as a result of the continuing use of the leased premises" by STS.

Plaintiffs do not question District's right to permit others, including private persons or organizations, to use the District's facilities at times and under conditions which do not interfere with the use of such facilities for school purposes. *See Royse Independent School District v. Reinhardt,* 159 S.W. 1010 (Tex.Civ.App.—Dallas 1913, writ ref'd). Their attack on the validity of the lease is based on the contention that District's Board of Trustees has given up its right to manage and control the property for a minimum period of 32 months (until February 1, 1986) to a maximum period of 50 years.

We agree that the lease effectively destroys the power of District to manage and control Alamo Stadium and surrounding property for school purposes. The lease gives to STS the exclusive right, except as provided in section 6.02 of the lease, to use the property for all lawful purposes unless District elects to spend millions of dollars to improve the stadium. The reservation to District of the right to use the property can hardly be classified as a "right." The District is first given the right to use the leased premises on an "as needed" basis, but only "in connection with legitimate" District events. But this "right" is, in fact, severely restricted. The right is freely exercisable only if the school event does not conflict with any "lawful use" contemplated by STS. In case of such conflict, District can only insist that STS use its "best efforts" to reach an agreement resolving the conflict. A right exercisable only with the agreement of another party is purely illusory. The plain truth is that District has the right to use the stadium only if it can establish that it wishes to use it for a "legitimate" District school event, and even then the "right" of use depends on whether STS desires to use the stadium at the same time for any "lawful purpose." It simply is not true, as defendants assert in their brief, that District "retains the right to use the stadium whenever necessary." That assertion flies directly in the teeth of the plain language of section 6.02.

The record discloses that, in fact, District has been forced to reschedule some events, such as school soccer matches, in order to allow STS to adhere to its own plans for using the stadium. There is no evidence of a single instance in which the scheduling conflict was resolved in a manner designed to meet District's wishes and plans.

As defendants point out, in *Royse Independent School District v. Reinhardt, supra,* the court said that the school board's exclusive power of management and control of school property within the district included the power to grant the Royster Booster Club the right to use the school baseball field so long as such use did not interfere with school activities. Because of the lease in question, District has divested itself of the right to permit others, for a fee, to use Alamo Stadium at times when such use would not interfere with District's use for school events and for purposes which would not result in injury to the property. Even if we ignore the language of section 6.02 and accept defendants' theory that District has the right to use the stadium whenever "necessary," District may not allow others to use the Stadium at all. Under the lease, when use of the stadium by District is not necessary, the exclusive right to use the stadium belongs to the lessee, STS, and all decisions concerning use of the stadium by others can be made only by STS. The surrender of District's right of management and control is patent. In fact, because of the language of section 6.02, District has even lost the power to determine when Alamo Stadium may be used for school events. Stated bluntly, all *power* of management and control has been surrendered to STS.

Again, defendants' argument that the stadium not only remain under the "exclusive" management of District but, because of improvements made by STS, District now has "greater and broader use of the stadium" conveniently ignores section 6.02 of the lease.

There can be no doubt that District's Board exceeded its powers when it, by the lease in question, effectively divested itself of the exclusive right to manage and control the property in question, including, for a period of perhaps 50 years, the exclusive right to determine when the District itself could use the school property for school purposes. The invalidity of such abdication of power and diversion of property held for public purposes has been recognized in Texas at least since 1887. *City of Brenham v. Brenham Water Co.,* 67 Tex. 542, 4 S.W. 143 (1887); *see Clear Lake City Water Authority v. Clear Lake Utilities Co.,* 549 S.W.2d 385 (Tex.1977); *Zachry v. City of San Antonio,* 157 Tex. 551, 305 S.W.2d 558 (1957); *Bowers v. City of Taylor,* 16 S.W.2d 520 (Tex. Comm'n App. 1929, judg. adopted), *on rehearing,* 24 S.W.2d 816, 817

(1930); *Wagner v. City of San Antonio,* 559 S.W.2d 672 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.); *Weekes v. City of Galveston,* 21 Tex.Civ.App. 102, 51 S.W. 544 (writ ref'd).

*University Interscholastic League v. Midwestern University,* 152 Tex. 124, 255 S.W.2d 177, 178 (1953) involved a seven-year lease of a football stadium to Midwestern University for the purpose of staging no more than six Midwestern University games a year. Although defendants rely on this case, it is not in point, since the validity of the lease was not challenged. In any event, the facts are significantly different from the facts in the case before us. As construed by the Supreme Court, the lease did no more than grant Midwestern the right to play a maximum of six games annually at the stadium. The actual holding in the case was that Midwestern did not have the right to sponsor a bowl game at the stadium. Even if the validity of the lease as opposed to its interpretation, had been involved, the case is not applicable here. The lease merely gave the Midwestern the right to play six games at the stadium. The lessee did not acquire the right, as did STS under the Alamo Stadium lease, to exclusive use of the premises for all lawful purposes except when lessor could demonstrate a need to use the premises.

*Southwestern Broadcasting Co. v. Oil Center Broadcasting Co.,* 210 S.W.2d 230 (Tex.Civ.App.—El Paso 1947, writ ref'd n.r.e.) can be no source of comfort to defendants, since it involved only the grant of an exclusive right to broadcast football games played at the stadium.

The judgment of the trial court is reversed and judgment is here rendered declaring the lease of Alamo Stadium to South Texas Sports, Inc., void, and enjoining defendants, San Antonio Independent School District and South Texas Sports, Inc., from attempting to give effect to any provisions of such lease. Defendant, South Texas Sports, Inc., is further enjoined from using Alamo Stadium or any of the property purportedly leased to it for any purpose.

All costs of this appeal are assessed against South Texas Sports, Inc.