

# THE ATTORNEY GENERAL
## OF TEXAS

December 29, 1988

JIM MATTOX
ATTORNEY GENERAL

Honorable Bruce Gibson
Chairman
Committee on Financial Institutions
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78769

Opinion No. JM-1000

Re: Whether a school district may rent a school building owned by a nonprofit foundation under certain circumstances and related questions (RQ-1476)

Dear Representative Gibson:

You request an opinion about certain powers of an independent school district. You report that rapid fluctuations in the population of the district make it difficult to plan for adequate classroom facilities. You describe the following proposal which the district is considering to deal with this problem.

> To save money and provide higher quality facilities, the district is interested in using removable classroom facilities acquired through a non-profit corporation that will be created by citizens of the school district to provide adjunct services to the school district as a tax-qualified public foundation. The district will not be officially involved in the creation, organization, or operation of the foundation.

You note that two alternative plans are under consideration using such a foundation to provide for the contemplated classroom facilities.

> The foundation will issue bonds or notes to acquire a site and construct or install removable modular classroom buildings. The bonds or notes will be secured by a deed of trust lien on the premises and will be payable solely from rentals paid by the district or a successor tenant or from proceeds of a

sale of the property. The district will rent the facilities for a one-year term with the option to extend the tenancy annually for 25 years; the district's obligation will be subject to the budgeting of the necessary amounts. The district will pay rent monthly or semiannually in fixed amounts that equal the amount due in a fiscal year on the foundation's bonds plus any insurance and similar costs. On the date the district ceases to pay rent or the expiration of 25 years, whichever comes first, possession of the property will return to the foundation. The district believes interest on these bonds is subject to federal income taxes.

The second plan is the same as the first except that, before the bonds are issued, the foundation and district will agree that on full payment of the bonds the rental agreement will terminate and the foundation will convey title to the property to the district, which will have agreed in advance to accept the donation of the property. The board of the school district will adopt a resolution approving the foundation's purposes and activities and consenting to the issuance of the foundation's bonds for the described purposes. Under this plan, the district believes the bonds can be issued on a tax-exempt basis under federal law.

We provide you with our opinion on each of the questions you ask in relation to the plans under consideration by the district. We have grouped questions one and two together, along with our answers. Question three is addressed separately.

(1) May the district, under the law of this state (including Section 20.48(c), Education Code), rent a school building owned by a nonprofit foundation created by interested citizens under these circumstances, assuming: (i) the district is not obligated to pay rent or occupy the premises beyond the current fiscal year and does not create a debt; (ii) funds are budgeted for the year in which the rent is due; and (iii) the nonprofit foundation retains title to the facilities?

(2) May the district, under the law of this state (including Section 23.26, Education Code), accept a donation of the property from the foundation after the bonds are paid in full?

The trustees of an independent school district have exclusive power "to manage and govern the public free schools of the district." Educ. Code § 23.26; Trustees of the Indep. School Dist. of Cleburne v. Johnson County Democratic Executive Comm., 52 S.W.2d 71 (Tex. 1932); Attorney General Opinion JM-531 (1986); see also Attorney General Opinion M-1047 (1972). The discretion of the trustees is limited only to the extent that they may not enter into agreements outside of the governmental purposes of the district. In other words, every transaction which they approve must relate to the operation of the public schools entrusted to their care. See River Rd. Neighborhood Ass'n. v. South Texas Sports, 720 S.W.2d 551 (Tex. App. - San Antonio 1986, writ dism'd; Royse Indep. School Dist. v. Reinhardt, 159 S.W. 1010 (Tex. Civ. App. - Dallas 1913, writ ref'd); Attorney General Opinion M-1047 (1972).

Additionally, the specifically enumerated powers of the trustees include the power to spend local tax funds for "renting school houses," Educ. Code § 20.48(c), and to accept donations. Educ. Code § 23.26(a). Thus, the trustees of the school district may arrange to rent portable classroom buildings and to accept a donation of the buildings from a private foundation, subject to the limitations discussed below.

As a matter of law, an independent school district may not expend money except according to a budget item adopted in due course as prescribed by law. Educ. Code § 23.47(a); see also § 4.03(c). Of course, the question of whether the trustees have properly exercised these powers in relation to a particular transaction concerning the lease of classroom space ("school houses") also is in part a question of fact. See River Road; Royse City, supra. Thus, whether or not a lease transaction results in fair value for the school district is a question of fact which this office cannot resolve. See, e.g., Attorney General Opinion JM-486 (1986).

You also ask:

Under Section 272.001(b)(5), Local Government Code, may the district, without competitive bidding, sell a site for the school facilities to the foundation for development in accordance with the rental agreement if the foundation's bond issue includes, and the

foundation pays to the district, an amount equal to the fair market value of the property that will be paid to the district?

An independent school district may sell its land only if the proceeds of the transfer are used for "the purchase of more convenient and more desirable school property" or for "the construction or repairing of school buildings" or for deposit "to the credit of the local maintenance fund of the district." Educ. Code § 23.30 (emphasis added). Additionally, the property must no longer be needed for school purposes. Attorney General Opinion O-1570 (1939). Because, under the facts you have provided, the land in question will be conveyed to a private party which will erect structures on it which will be leased back to the school district and used as classrooms, the district can hardly claim that the land is "no longer needed for school purposes." In fact, under such a plan, the land is precisely needed for school purposes. The district thus lacks the authority to convey the land to a private foundation for such purposes. We, therefore, need not reach questions concerning the application of section 272.001 of the Local Government Code.

Additionally, several aspects of the proposed transactions contained in the second proposal raise questions about the authority of the school district to proceed with its participation in such a plan. You relate that, under that arrangement, the district, before bonds are issued by a private foundation, must agree that:

(1) on full payment of the bonds the rental agreement will terminate and the foundation will convey title to the property to the district, which will have agreed in advance to accept the donation of the property;

(2) The board of the school district will adopt a resolution approving the foundation's purposes and activities and consenting to the issuance of the foundation's bonds for the described purposes.

You cite no authority for the district to enter into these arrangements, and we can find none. Cf. Educ. Code § 20.48; see also Attorney General Opinion MW-522 (1982).

The transaction which you have described to us requires the trustees to take action that is beyond the powers of an independent school district. The trustees of an independent school district have the powers expressly conferred on them

by law or necessarily implied from express powers. Harlingen Indep. School Dist. v. C. H. Page & Bros., 48 S.W.2d 983 (Tex. Comm'n App. 1932, judgment adopted). More specifically, the board of trustees of the district has no power to approve the organization, purposes, and activities of a private foundation and "[to consent] to the issuance of the foundation's bonds for the described purposes." (Emphasis added.) Thus, we need not consider whether the district's "consent" to the issuance of bonds by a private entity may violate article III, section 52(a) of the Texas Constitution, which forbids independent school districts from lending public credit to private individuals, associations, or corporations. We also note that the arrangements in the proposed second alternative may violate the doctrine which prevents a political subdivision from entering into arrangements that would potentially control or embarrass it in the exercise of its governmental powers. See Clear Lake City Water Auth. v. Clear Lake Utilities Co., 549 S.W.2d 385 (Tex. 1977).

## S U M M A R Y

The board of trustees of an independent school district may rent classroom space for fair value in a transaction with a private foundation. Educ. Code § 20.48. The board may accept the donation of portable classroom buildings from such a foundation. Educ. Code § 23.26. An independent school district may sell its land only if the proceeds of the transfer are used for "the purchase of more convenient and more desirable school property" or for "the construction or repairing of school buildings" or for deposit "to the credit of the local maintenance fund of the district." Educ. Code § 23.30. The trustees of an independent school district have no power to "consent" to the issuance of bonds by a private foundation.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by D. R. Bustion, II
Assistant Attorney General