ROSE, APPELLEE, *v.* MAYFIELD,
SUCCESSOR TO CONNOR, ADMR., ET AL.,
APPELLANTS.

(No. 48003—Decided November 13,
1984.)

*Berger & Kirschenbaum Co., L.P.A.,* and *Robert E. Gross,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mitchell A. Stern,* for appellant Administrator.

*Bernard H. Niehaus,* director of law, for appellant city of Westlake.

*Willacy & LoPresti* and *Aubrey B. Willacy,* urging reversal for *amici curiae.*

CORRIGAN, C.J. This case is before us on the following facts. Plaintiff-appellee, James L. Rose, was working for defendant-employer city of West-lake, on March 3, 1978, when he fell off a city-owned backhoe and suffered injuries to his neck and shoulder. His claim was allowed by the Industrial Commission, and the Bureau of Workers' Compensation paid all of his medical bills including his medication.

On January 2, 1979, plaintiff filed a request for determination of the percentage of permanent partial disability. The district hearing officer found that plaintiff had a twenty-two percent disability due to his injury. The district hearing officer also found that plaintiff could not participate under R.C. 4123.57(B) since, with all other previous percentages of permanent partial disability awarded him, he would exceed one hundred percent permanent partial disability, the statutory maximum.

Plaintiff filed an application for reconsideration. The application was denied by a staff hearing officer who affirmed the order of the district hearing officer.

Plaintiff appealed this decision to the Cuyahoga County Court of Common Pleas, pursuant to R.C. 4123.519.

Cross-motions for summary judgment were filed. On January 19, 1982, the trial court granted defendants' motion. Plaintiff appealed that decision to this court, *Rose* v. *Connors* (Oct. 28, 1982), Cuyahoga App. No. 44988, unreported, in which we held that the trial court did have jurisdiction, and therefore the decision was reversed and the cause remanded for a decision on the constitutional question.

The case was reassigned to Judge Ann Dyke who held that the one hundred percent limitation on permanent partial disability, R.C. 4123.57(B), is unconstitutional.

Defendants have appealed this decision and assign the following as error:

"I. Section 4123.57(B), Revised

Code does not deny equal protection of the law under the Fourteenth Amendment to the United States Constitution by limiting the percentage of permanent partial disability awards to 100%.

"II. Section 4123.57(B), Revised Code does not deny equal protection of the law under the Fourteenth Amendment to the United States Constitution by placing a one-hundred per cent limitation on permanent partial disability benefits.

"III. The trial court committed prejudicial error in granting the plaintiff's motion for summary judgment by imposing the burden of proof on the defendants in violation of Civil Rule 56.

I

Appellants' first two assignments of error shall be considered together in that they deal with the trial court's rationale for declaring R.C. 4123.57(B) unconstitutional, ruling, essentially, that the statute denies appellee and all others similarly situated equal protection of the law, in violation of Section 26, Article II of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

The court further found that the legislature has in effect created two classes of claimants under the statute, those who can receive a permanent partial disability award and those who cannot, in that they have already received permanent partial disability awards totalling one hundred percent. Although the court recognized that avoiding depletion of the workers' compensation fund is a "compelling government interest as well as a legitimate legislative purpose * * *," it stated that it was "not convinced that the workers' compensation fund will be depleted if judicial enforcement of the limiting provision is refused. * * *"

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' * * *'" Dandridge v. Williams (1970), 397 U.S. 471, 485, citing with approval Lindsley v. Natural Carbonic Gas Co. (1911), 220 U.S. 61, 78. As long as the classification does not burden a suspect group or a fundamental interest, a statute in question would be overruled on equal protection grounds only when "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational. * * *'" Vance v. Bradley (1979), 440 U.S. 93, 97.

The courts of Ohio have consistently applied the "rational basis" test in their analyses of alleged constitutional defects in the workers' compensation statutes. Kinney v. Kaiser Aluminum & Chemical Corp. (1975), 41 Ohio St. 2d 120, 123 [70 O.O.2d 206]; State, ex rel. Nyitray, v. Indus. Comm. (1983), 2 Ohio St. 3d 173, 175; Zaricki v. Laco Die Casting Co. (July 8, 1982), Cuyahoga App. No. 44254, unreported.

The concept of equal protection of the law is that "* * * '* * * no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place * * * under like circumstances ' * * *.'" Roth v. Public Employees Retirement Bd. (1975), 44 Ohio App. 2d 155, 157-158 [71 O.O.2d 240], citing Chambers v. Owens-Ames-Kimball Co. (1946), 146 Ohio St. 559, [33 O.O. 60], and Hamann v. Heekin (1913), 88 Ohio St. 207. "* * * It has been stated that in order to determine whether a law is for the equal protection and benefit of all people, it is necessary to ascertain whether it operates equally upon all per-

sons charged with the same obligation. * * *" *Roth, supra,* at 158, citing *State, ex rel. Hostetter,* v. *Hunt* (1937), 132 Ohio St. 568 [8 O.O. 558].

The relevant portion of the statute coming under constitutional attack provides:

"No award shall be made under this division based upon a percentage of disability which, when taken with all other percentages of permanent disability, exceeds one hundred per cent. * * *" R.C. 4123.57(B).

The trial court found that this provision creates two distinct classes of claimants, those who are eligible to receive permanent partial disability benefits for a present injury because awards of permanent partial disability for prior injuries do not total one hundred percent, and those individuals who are not eligible to receive permanent partial disability benefits because they have received permanent partial disability benefits totalling one hundred percent or more due to previous injuries.

Arguably, the operation and ultimate effect of this provision will be that not every claimant will receive the same total percentage of permanent partial disability benefits prior to the invocation of the one hundred percent maximum cut-off. However, there is no way the state could equalize such benefits. The state has, however, applied the one hundred percent maximum to *all* claimants. In this respect plaintiff is treated no differently than any other person attempting to claim the benefits of the statute.

It cannot be said that there is no rational basis for such a limitation. The state of Ohio has a legitimate interest in maintaining the level of benefits payable to injured workers. The Workers' Compensation Fund is a self-supporting system in that it is funded by employers based upon a percentage of the employer's payroll. To open the state fund to an unlimited amount of permanent partial disability compensation would undermine the actuarial soundness of the system as well as upset the balance between the rights, duties, obligations and benefits of employers and employees.

It must be kept in mind that the workers' compensation system is a product of a compromise between employers and employees. The court in *Allen* v. *Eastman Kodak Co.* (1976), 50 Ohio App. 2d 216, 225 [4 O.O.3d 179], recognized:

"The workmen's compensation laws of Ohio may well not be perfection in their attempt to compensate employees for their injuries, but they do indeed provide a reasonably equitable balance between the rights, duties and privileges of both the employee and the employer."

The court in *Geduldig* v. *Aiello* (1974), 417 U.S. 484, upheld California's decision not to insure under its program the risk of disability resulting from normal pregnancy and found that such does not constitute a violation of the Equal Protection Clause. The court further stated that a state has legitimate interests in maintaining the self-supporting nature of its unemployment compensation disability insurance program; in distributing the available resourses in such a way as to keep benefit payments at an adequate level for disabilities that are covered, rather than to cover all disabilities inadequately; and in maintaining the contribution rate at a level that will not unduly burden participating employees. *Id.* at 496.

The United States Supreme Court has also upheld a state administrative regulation which imposed a maximum limit on the total amount of aid which any one family unit could receive in connection with the Federal Aid to Families with Dependent Children program, finding too that the maximum grant regulation did not violate the Equal Protection Clause. *Dandridge* v. *Williams, supra.*

The court in *Schweiker* v. *Wilson*

(1981), 450 U.S. 221, dealt with a constitutional challenge to a portion of the Social Security Act dealing with Supplemental Security Income ("SSI"). The Act provides that individuals who reside in a medical facility which receives Medicaid funds for the care of eligible individuals are eligible to receive SSI. However, individuals residing in a public mental institution are ineligible to receive Medicaid funds, and, thus, may not receive SSI. The court, at 238-239, upheld the legislation and stated:

"* * * This Court has granted a 'strong presumption of constitutionality' to legislation conferring monetary benefits, *Mathews* v. *De Castro* [1976], 429 U.S. [181], at 185, because it believes that Congress should have discretion in deciding how to expend necessarily limited resources. Awarding this type of benefits inevitably involves the kind of line-drawing that will leave some comparably needy person outside the favored circle. We cannot say that it was irrational of Congress, in view of budgetary constraints, to decide that it is the Medicaid recipients in public institutions that are the most needy and most deserving of the small monthly supplement. * * *" (Footnotes omitted.)

This court was faced with an equal protection challenge to the definition of compensable injury in *Zaricki* v. *Laco Die Casting Co.*, *supra*. The court, at pages 3-4, found as follows:

"On applying the rational basis test to the challenged legislation and classification, which deny Workers' Compensation benefits for injuries occasioned solely by emotional stress, we find:

"1) The State has a legitimate interest in maintaining the self-supporting nature of the Workers' Compensation fund;

"2) The State has a legitimate interest in distributing the available resources in a manner that keeps benefit payments at an adequate level for injuries that are covered; and

"3) The State has a legitimate concern in maintaining the contribution rate at a level that will not unduly burden participating employers."

The trial court herein stated in its opinion that, although avoiding depletion of the Workers' Compensation Fund is a compelling government interest as well as a legitimate legislative purpose, it was not convinced that the Workers' Compensation Fund would actually be depleted were the one hundred percent maximum not to be enforced.

The trial court has misapplied the rational basis test. The question is not one of whether the fund will actually be depleted but whether the legislature could rationally have decided that the one hundred percent limit should be imposed in order to avoid depletion of the fund. The United States Supreme Court in *Minnesota* v. *Clover Leaf Creamery Co.* (1981), 449 U.S. 456, held that a ban on plastic, non-returnable milk containers bears a rational relation to the state's objectives and was sustained under the Equal Protection Clause.

The court further held, as indicated at paragraph 1(a) of the syllabus, that:

"The Equal Protection Clause does not deny Minnesota the authority to ban one type of milk container conceded to cause environmental problems, merely because another already established type is permitted to continue in use. Whether *in fact* the statute will promote more environmentally desirable milk packaging is not the question. The Equal Protection Clause is satisfied if the Minnesota Legislature *could rationally have decided* that its ban on plastic milk jugs might foster greater use of environmentally desirable alternatives. * * *" (Emphasis *sic*.)

Therefore, there exists a sufficient rational basis to uphold R.C. 4123.57(B) as not being violative of the Equal Protection Clause. Appellants' first two assignments of error are well-taken.

304

## II

With respect to appellants' third assignment of error, the burden of proof is on the moving party, the plaintiff herein, to establish that he is entitled to summary judgment as a matter of law. Civ. R. 56(C); *Rodger* v. *McDonald's Restaurants of Ohio, Inc.* (1982), 8 Ohio App. 3d 256, 258.

In *Regan* v. *Taxation with Representation of Washington* (1983), 461 U.S. 540, a lawsuit was filed challenging the constitutionality of a tax statute. The court, at pages 547-548, held:

" '\* \* \* Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.' *Madden* v. *Kentucky,* 309 U.S. 83, 87-88 (1940) \* \* \*."

The court in *State* v. *Perry* (1972), 29 Ohio App. 2d 33 [58 O.O.2d 25], stated in paragraph one of the syllabus:

"In order to successfully challenge the constitutionality of R.C. 2923.43 or any other statute, the assailant must negative every reasonable, conceivable basis which might support the statute attacked, and point out the particular provision that has been violated and the ground on which it has been violated. Its invalidity must be made to appear clearly, plainly, fully, unequivocally, convincingly and by highly persuasive, irrefragable evidence."

Thus, the plaintiff did not meet his burden "to negative every conceivable basis" which might support the statute. The plaintiff's motion for summary judgment should not have been granted. Appellants' third assignment of error is well-taken.

For the foregoing reasons, the deci-sion of the trial court declaring R.C. 4123.57(B) unconstitutional and granting plaintiff's motion for summary judgment is reversed.

*Judgment reversed.*

MARKUS and PRYATEL, JJ., concur.