THE STATE, EX REL. SEARS, ROEBUCK & COMPANY, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLANTS.

[Cite as State, ex rel. Sears, Roebuck & Co., *v.* Indus. Comm. (1990), 52 Ohio St. 3d 144.]

(No. 88-2038—Submitted March 14, 1990—Decided July 3, 1990.)
(Motion for rehearing filed July 12, 1990.)

Seeley, Savidge & Aussem and Thomas M. Carolin, for appellee.

Anthony J. Celebrezze, Jr., attorney general, Donald R. Ford, Jr., and Cheryl J. Nester, for appellant Industrial Commission.

Victor H. Hahn, for appellant John Bednar.

Stewart Jaffy & Associates Co., L.P.A., and Stewart R. Jaffy, urging reversal, for amici curiae, the Ohio Academy of Trial Lawyers, the Ohio AFL-CIO, and the United Autoworkers.

WRIGHT, J. This case presents us with two questions. First, does R.C. 4123.57(B) require the Industrial Commission to aggregate all permanent partial disability awards, including those granted for injuries occurring prior to October 1, 1963, to determine when the one hundred percent permanent partial disability ceiling of R.C. 4123.57(B) has been reached? Second, is the statute unconstitutionally retroactive because it provides for aggregation of permanent partial compensation awards from injuries sustained before the 1963 amendment of R.C. 4123.57(B) with awards for injuries sustained after the 1963 amendment? We answer both questions in the affirmative. For the reasons that follow, we reverse the Court of Appeals for Franklin County, which issued a writ of mandamus ordering the commission to vacate its awards to Bednar for his 1982 and 1983 injuries, because "* * * when these awards are included with the other percentages of permanent disability awarded claimant, they exceed the one hundred percent limitation in violation of R.C. 4123.57(B)."

I

It is settled law that a relator has the burden of showing a clear legal right to a writ of mandamus as a remedy from a determination of the Industrial Commission. State, ex rel. Pressley, v. Indus. Comm. (1967), 11 Ohio St. 2d 141, 40 O.O. 2d 141, 228 N.E. 2d 631. See, also, State, ex rel. Westchester Estates, Inc., v. Bacon (1980), 61 Ohio St. 2d 42, 15 O.O. 3d 53, 399 N.E. 2d 81, paragraph one of the syllabus. It is also settled that mandamus will not lie where the record contains some evidence to support the commission's findings. State, ex rel. Cassity, v. Montgomery Cty. Dept. of Sanitation (1990), 49 Ohio St. 3d 47, 48, 550 N.E. 2d 474, 475, citing State,

*ex rel. Burley,* v. *Coil Packing, Inc.* (1987), 31 Ohio St. 3d 18, 31 OBR 70, 508 N.E. 2d 936; *State, ex rel. Lewis,* v. *Diamond Foundry Co.* (1987), 29 Ohio St. 3d 56, 57-58, 29 OBR 438, 440, 505 N.E. 2d 962, 964; *State, ex rel. Paragon,* v. *Indus. Comm.* (1983), 5 Ohio St. 3d 72, 74, 5 OBR 127, 128, 448 N.E. 2d 1372, 1374. Conversely, an abuse of discretion is present and mandamus will lie when there is no evidence upon which the commission could base its factual conclusions. *Paragon, supra,* at 74, 5 OBR at 128, 448 N.E. 2d at 1374, citing *State, ex rel. Kramer,* v. *Indus. Comm.* (1979), 59 Ohio St. 2d 39, 42, 13 O.O. 3d 30, 31, 391 N.E. 2d 1015, 1017.

R.C. 4123.57 (entitled "Partial disability compensation") governs the schedule and number of weekly payments a claimant may receive for specified injuries arising out of and in the course of claimant's employment. Effective October 1, 1963, the General Assembly amended paragraph (B) of this section by adding the following language:

"No award shall be made under this division based upon a percentage of disability *which, when taken with all other percentages of permanent disability,* exceeds one hundred per cent." (Emphasis added.)

The first controversy of this case concerns the interpretation of this amendment. The commission, Bednar, and the *amici curiae* all urge this court to adopt the position that the amend-ment refers only to percentages of permanent disability resulting from injuries occurring after October 1, 1963, the amendment's effective date. Under this interpretation, Bednar's seventy-seven percent permanent partial compensation award received for the 1961 injury would not be aggregated with Bednar's other permanent partial compensation percentage awards. Since Bednar's awards would then total only fifty-eight percent,[3] he would be eligible to receive the commission's twelve percent and thirty percent permanent partial compensation awards for injuries occurring in 1982 and 1983, respectively.

Conversely, Sears urges this court to adopt the position that the amendment expressly refers to all prior awards, and thus that the seventy-seven percent permanent partial compensation award received for this 1961 injury must be included when calculating the aggregate total for permanent partial compensation percentage awards. Since Bednar's percentage award would exceed one hundred percent when including the seventy-seven percent pre-1963 award, Bednar would be ineligible to receive the twelve percent and thirty percent awards for injuries occurring in 1982 and 1983, respectively. This is because Bednar would have already exceeded the statutory ceiling of one hundred percent[4] before ever receiving his awards for the 1982 and 1983 injuries.

We believe the legislature ex-

---

[3] If the award for the 1961 injury is *excluded,* Bednar's total permanent partial compensation percentage awards for injuries occurring in 1966 and 1981 would be fifty-eight percent (forty-eight percent and ten percent, respectively). If Bednar were allowed to receive his awards for the 1982 and 1983 injuries, his total under this interpretation would then be one hundred per-cent, meeting but not exceeding the statutory ceiling found in R.C. 4123.57(B).

[4] If the award for the 1961 injury is *included,* Bednar's total permanent partial compensation percentage awards for pre-1982 injuries would already exceed the one hundred percent statutory ceiling. In fact these awards would total one hundred

pressed a clear and unambiguous intention in enacting this amendment to R.C. 4123.57(B) to have all permanent partial compensation percentage awards after 1963 aggregated in calculating the statutory one hundred percent ceiling mandated by this section.

The commission, Bednar, and the *amici curiae* would have this court insert the following italicized phrase, so that the amendment would read, in effect:

"* * * when taken with all other percentages of permanent disability *resulting from injuries occurring after October 1, 1963 * * *.*"

"[I]n determining the legislative intent of a statute 'it is the duty of this court to give effect to the words used [in a statute], not to delete words used *or to insert words not used.*' (Emphasis added.)" *Wheeling Steel Corp.* v. *Porterfield* (1970), 24 Ohio St. 2d 24, 28, 53 O.O. 2d 13, 15, 263 N.E. 2d 249, 251, quoting *Columbus-Suburban Coach Lines* v. *Pub. Util. Comm.* (1969), 20 Ohio St. 2d 125, 127, 49 O.O. 2d 445, 446, 254 N.E. 2d 8, 9. The legislature had the perfect opportunity to include this language when it amended R.C. 4123.57(B), but chose not to do so. See *id.* Further, this court will not modify an unambiguous statute under the guise of judicial interpretation. *Crowl* v. *DeLuca* (1972), 29 Ohio St. 2d 53, 58 O.O. 2d 107, 278 N.E. 2d 352, citing *Slingluff* v. *Weaver* (1902), 66 Ohio St. 621, 64 N.E. 574, paragraph one of the syllabus.

## II

Having found the 1963 amendment to R.C. 4123.57(B) to have a clear and unambiguous meaning, we must next answer the question of whether the amendment retroactively affects a claimant's substantive rights. *In re Nevius* (1963), 174 Ohio St. 560, 23 O.O. 2d 239, 191 N.E. 2d 166. If R.C. 4123.57(B) does operate retroactively by aggregating awards for pre-1963 and post-1963 injuries, such aggregation is unconstitutional. Section 28, Article II, Ohio Constitution.

To answer the question, we must determine what it was Bednar lost in 1963. It is undisputed that his pre-1963 seventy-seven percent permanent partial compensation award remained undisturbed. *State, ex rel. Frank,* v. *Keller, supra,* at paragraph two of the syllabus. As of 1963, the seventy-seven percent award was the only one in which he had a vested right when R.C. 4123.57(B) was amended. Sears asserts that this right is the only vested substantive right at issue in this case, and that because the 1963 amendment to R.C. 4123.57(B) did not affect that right, the amendment was not applied retrospectively.

We believe, however, that this analysis ignores another right that Bednar lost when R.C. 4123.57(B) was amended. The nature of this other right becomes apparent if permanent partial compensation claims are analyzed in terms of damage remedies. In *State, ex rel. Latino,* v. *Indus. Comm.* (1968), 13 Ohio St. 2d 103, 107-108, 42 O.O. 2d 324, 326, 234 N.E. 2d 912, 915, we recognized that the calculation of percentages of permanent disability in R.C. 4123.57(B) was used as a means of fixing "damage" awards, "* * * and not as an absolute limit to accumulated awards." In other words, it is possible for a worker to be more than one hundred percent disabled. We adopted an

---

thirty-five percent (a seventy-seven percent permanent partial compensation for the 1961 injury, a forty-eight percent permanent partial compensation for the 1966 injury, and a ten percent permanent partial compensation for the 1981 injury).

analysis of such awards as damages rather than merely compensation for impairment of earning capacity. *Id.* at 108, 42 O.O. 2d at 326, 234 N.E. 2d at 915. Each permanent partial compensation claim is a discrete entity arising from a separate injury, in the same way that tort claims are considered individually, without regard to whether a claimant has prosecuted previous suits.

Workers' compensation was instituted to deal with workers' claims against their employers administratively, providing a tribunal to hear claims that would otherwise have been resolved by the courts. Section 35, Article II, Ohio Constitution; *State, ex rel. Engle,* v. *Indus. Comm.* (1944), 142 Ohio St. 425, 27 O.O. 370, 52 N.E. 2d 743. Workers' compensation provides an alternative to the tort system, but it does not extinguish workers' rights to a remedy for injuries on the job.

Section 35, Article II, Ohio Constitution begins by announcing its "* * * purpose of *providing compensation* to workmen and their dependents, for death, *injuries* or occupational disease, occasioned in the course of such workmen's employment * * *." (Emphasis added.) Aggregating Bednar's seventy-seven percent pre-1963 permanent partial compensation award with post-1963 awards would mean that Bednar could have been precluded from any remedy for a post-1963 injury that exceeded the remaining twenty-three percent of permanent partial compensation available

to him. This could have left him with the 1982 and 1983 injuries for which he had no remedy under R.C. 4123.57(B). He therefore would have lost the right to press a claim for those injuries that was guaranteed by the Ohio Constitution.

The constitutional guarantee of compensation for such injuries is a substantive right. Because R.C. 4123.57(B) affected that right when the seventy-seven percent permanent partial compensation award was aggregated with post-1963 disability percentages, the statute operated to use prior awards to deprive Bednar of a substantive right. This constitutes a retroactive impairment of remedy for an injury in violation of Section 28, Article II, Ohio Constitution. It is retroactive because workers who had suffered injuries prior to the 1963 amendment were not afforded the equal opportunity to recover compensation for injuries as were those workers who had not sustained a compensable injury prior to the 1963 amendment. In other words, the statutory scheme attaches a consequence to pre-1963 awards which was not present when those awards were made.

However, we reject the notion that the General Assembly may not preclude permanent partial compensation percentages from aggregating more than one hundred percent on a prospective basis.[5] In its prospective application to claims arising from injuries sustained after October 1, 1963, the

---

[5] It has been suggested that the issue of the constitutionality of prospective application of the provision in former R.C. 4123.57(B) mandating a one hundred percent ceiling on awards for permanent partial compensation under workers' compensation is not before us. The Industrial Commission raised this issue, however, on

page three of the brief it submitted to us: "This case offers this court the opportunity to examine the extent of constitutional protection pursuant to the amendment under R.C. 4123.57(B)." The Attorney General then went on at length in support of our conclusion herein.

provision in former R.C. 4123.57(B) (now in [A]) mandating a one hundred percent ceiling on awards for permanent partial compensation under workers' compensation is constitutional. Retrospective application of the provision in R.C. 4123.57(B) (now in [A]) mandating a one hundred percent ceiling on awards for permanent partial compensation so as to aggregate awards for injuries sustained before October 1, 1963 with awards for injuries sustained after October 1, 1963 is unconstitutional. The policy arguments advanced against application of the 1963 legislation to post-1963 injuries do not rise to the level of constitutional right. Those arguments, if meritorious, must be addressed to the legislature.

### III

In light of the unconstitutionality of aggregating pre-1963 permanent partial compensation award percentages with post-1963 award percentages, we conclude that the commission had some evidence before it upon which to base its factual conclusion that Bednar was entitled to receive the twelve percent and thirty percent awards for his 1982 and 1983 injuries, respectively. See *State, ex rel. Burley,* v. *Coil Packing, Inc.* (1987), 31 Ohio St. 3d 18, 31 OBR 70, 508 N.E. 2d 936, syllabus; *State, ex rel. Rouch,* v. *Eagle Tool & Machine Co.* (1986), 26 Ohio St. 3d 197, 198, 26 OBR 289, 290, 498 N.E. 2d 464, 466, fn. 1. The commission did not abuse its discretion in allowing these awards. Therefore, the court of appeals' issuance of a writ of mandamus was inappropriate and is

hereby reversed. The 1982 and 1983 awards of the Industrial Commission are reinstated.

*Judgment reversed.*

MOYER, C.J., H. BROWN and RESNICK, JJ., concur.

SWEENEY and DOUGLAS, JJ., concur in part and dissent in part.

HOLMES, J., dissents.

DOUGLAS, J., concurring in part and dissenting in part. I concur in paragraph two of the syllabus, Part III of the opinion, and the judgment reversing the holding of the court of appeals and reinstating the decision of the Industrial Commission. I respectfully dissent, for the reasons that follow, as to paragraph one of the syllabus and the remainder of the majority opinion.

It is a basic tenet that courts will not decide a constitutional issue when a case before the court can be decided on a non-constitutional basis. *Kinsey* v. *Bd. of Trustees of Police & Firemen's Disability & Pension Fund of Ohio* (1990), 49 Ohio St. 3d 224, 225, 551 N.E. 2d 989, 991. The majority not only violates that tenet but goes further in this case and decides a constitutional issue not even raised in the first instance by the parties.[6] Accordingly, the question of the constitutionality of the *prospective* application of R.C. 4123.57(B) (now [A]), involving injuries sustained after October 1, 1963, is not presently before us for decision. Ap-

---

[6] After this dissent had been written and filed and after the case had been voted out of conference, the majority added fn. 5. No comment on the footnote need be made for the knowledgeable reader. Suffice to say, the thesis of the footnote has no basis in law and, in fact, literally applied, the dimensions it reaches are inconceivable.

pellant Industrial Commission's proposition of law is:

"The Industrial Commission of Ohio had not abused its discretion or otherwise act [*sic*] unlawfully when by order dated March 1, 1985 and January 27, 1986 it found John Bednar, Claimant, entitled to an award of twelve percent of permanent partial disability in Claim Number 845368-22 and an award of thirty percent for permanent partial disability in Claim Number 818804-22."

Nothing in this proposition of law presents the issue of the constitutionality of the *prospective* application of former R.C. 4123.57(B).

Appellee Sears, Roebuck & Company's proposition of law is:

"The one hundred percent limitation of R.C. 4123.57 requires that in claims with a date of injury subsequent to October 1, 1963, all permanent partial disability awarded to the claimant be aggregated. Such aggregation would, of necessity, include claims accruing prior to October 1, 1963."

Nothing in this proposition of law presents the issue of the constitutionality of the *prospective* application of former R.C. 4123.57(B).

*Amici,* the Ohio Academy of Trial Lawyers, the Ohio AFL-CIO and the United Autoworkers, do, in their proposition of law number two, present, in some measure, the prospective application question. *Amici* are not, of course, parties to the action and may not present original issues for the court to decide.

Applying paragraph two of the syllabus of the majority opinion answers the inquiry presented to us. This is so because *only* the *retrospective* application of former R.C. 4123.57(B) would deprive claimant Bednar of the two awards in question.

The law in question was effective October 1, 1963. That is the date to be used in settling the dispute between appellant and appellee which, of course, materially affects Bednar. The language of former R.C. 4123.57(B) to be interpreted states:

"No award shall be made under this division based upon a percentage of disability *which, when taken with all other percentages of permanent disability, exceeds one hundred per cent.*" (Emphasis added.)

For the *1961* injury, Bednar was awarded permanent partial disability of seventy-seven percent. This injury obviously occurred before the 1963 change in the law. For the *1966* injury, Bednar was awarded forty-eight percent permanent partial disability. For the *1981* injury, Bednar was awarded ten percent permanent partial disability. For the *1982* injury, Bednar was awarded twelve percent permanent partial disability. For the *1983* injury, Bednar was awarded thirty percent permanent partial disability.

Since it is clear that the injuries sustained by Bednar *after* 1963 total exactly one hundred percent permanent partial disability, if the law is not applied retrospectively then Bednar has not received an amount which "exceeds one hundred per cent" and the question of *prospective* application of the law is, in addition to not being before us, not necessary to decide.

Since the majority chooses to decide an issue not properly before us, I comment further on that issue. Is that language of R.C. 4123.57, which mandates a one hundred percent ceiling on awards for permanent partial disability, constitutional?

It is comforting to see the majority at least cites to Section 35, Article II of the Ohio Constitution. It is disquieting, however, to then have the majority completely ignore the mandates of the constitutional provision.

Section 35, Article II of the Ohio

Constitution clearly contemplates "* * * compensation to workmen and their dependents, for * * * injuries * * * occasioned in the course of such workmen's employment * * *." There is no dispute that Bednar was injured during the course of his employment during the years 1982 and 1983 — and that two claims were made for the injuries and were allowed by the commission. Yet, if the injury suffered by Bednar in 1961 had, instead, occurred *after* 1963, Bednar (and all other injured workmen now likely situated) would, under the holding of the majority, be barred from receiving compensation for his 1982 and 1983 injuries notwithstanding the constitutional provision that compensation be awarded for injuries occurring during the course of employment.

By today's decision, the majority, for all practical purposes, dictates a course of action for injured workers about which some members of the majority usually complain. Given today's holding, any workman who is approaching or has reached one hundred percent permanent partial disability for which awards have been made will, rather than continuing to work for a willing employer, quit working and seek permanent total disability. How this makes any sense is difficult to comprehend.

For the foregoing reasons I concur in part and dissent in part.

SWEENEY, J., concurs in the foregoing opinion.

HOLMES, J., dissenting. I must respectfully dissent from the majority's opinion which, in my view, completely misconstrues the plain language of R.C. 4123.57(B), as amended effective October 1, 1963. The statute is *not* expressly made retrospective. Even if this threshold were met, R.C. 4123.57(B) does not contravene the ban upon retrospective legislation set forth in Section 28, Article II of the Ohio Constitution, as it does not take away or impair any vested substantive rights acquired prior to October 1, 1963.

The issue presented in this case is of a species with which the majority of this court, as well as this writer, is well familiar: whether an enactment of the General Assembly is to be retroactively applied, and if so, whether such application violates the proscription in Section 28, Article II of the Ohio Constitution. In *Van Fossen* v. *Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, 522 N.E. 2d 489, paragraphs one and three of the syllabus, this court unanimously utilized a clear and concise method for analyzing such cases. See *id.* at 119-120, 522 N.E. 2d at 507 (H. Brown, J., concurring in part). Stripped from the analytical moorings of *Van Fossen,* the majority's reasoning drifts to the untenable and unnecessary conclusion that aggregation of permanent partial compensation awards for injuries sustained prior to October 1, 1963, with awards for injuries sustained after that date, violates the Ohio Constitution.

"The issue of whether a statute may constitutionally be applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply. Upon its face, R.C. 1.48 establishes a threshold analysis which must be utilized prior to inquiry under Section 28, Article II of the Ohio Constitution." *Van Fossen, supra,* paragraph one of the syllabus. R.C. 1.48 provides that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." The majority fails to apply this threshold analysis. Instead, the majority takes a clear and unam-

biguous statute and reaches a rather ambiguous conclusion, *i.e.,* that the expressed intention of the legislature in amending R.C. 4123.57(B) was "to have all permanent partial compensation percentage *awards after 1963* aggregated in calculating the statutory one hundred percent ceiling mandated by this section." (Emphasis added.) This statute is clearly prospective only in nature, as it affects only the *calculation* of awards for injuries occurring after October 1, 1963.

The majority skips over R.C. 1.48 and the expressed intention of the General Assembly and concludes, notwithstanding the prospective operation of the 1963 amendment to R.C. 4123.57(B) (to injuries occurring after its effective date), that because the *effect* of this prospective application may, in some instances, involve consideration of pre-October 1963 permanent partial compensation awards the statute retroactively impairs a "remedy" for such pre-amendment injuries. This untenable leap in logic escapes me.

When faced with the application of a clear and unambiguous statute, this court has long declared that "[a] statute is not retroactive merely because it draws on antecedent facts for a criterion in its operation." *United Engineering & Foundry Co.* v. *Bowers* (1960), 171 Ohio St. 279, 282, 13 O.O. 2d 240, 241, 169 N.E. 2d 697, 699; *Cleveland Gear Co.* v. *Limbach* (1988), 35 Ohio St. 3d 229, 233, 520 N.E. 2d 188, 193; *EPI of Cleveland, Inc.* v. *Limbach* (1989), 42 Ohio St. 3d 103, 106,

537 N.E. 2d 651, 654. Cf. *Lakengren* v. *Kosydar* (1975), 44 Ohio St. 2d 199, 203, 73 O.O. 2d 502, 504, 339 N.E. 2d 814, 817. Amended R.C. 4123.57(B) does not *affect* pre-October 1963 awards *in any manner.*[7] Rather, that statute merely draws upon the *fact* of any such pre-amendment awards in determining the *amount* of awards for post-amendment injuries. R.C. 4123.57(B) is not retroactive legislation.

Moreover, this statute is not retrospective in its operation for the simple reason that aggregation of *prior* claims to calculate *present* "damages" has no effect whatsoever upon the validity or amount of such prior claims. It is well settled that "the maximum amount of compensation to which claimant is entitled [under R.C. 4123.57(B)] is a substantive right *and is governed by the statutory law in effect on the date of injury.*" (Emphasis added.) *State, ex rel. Frank,* v. *Keller* (1965), 3 Ohio App. 2d 428, 430, 32 O.O. 2d 549, 550, 210 N.E. 2d 724, 726; *State, ex rel. Vaughn,* v. *Indus. Comm.* (1982), 69 Ohio St. 2d 115, 23 O.O. 3d 161, 430 N.E. 2d 1332; *State, ex rel. Samkas,* v. *Indus. Comm.* (1982), 70 Ohio St. 2d 279, 281, 24 O.O. 3d 364, 365, 437 N.E. 2d 288, 289; *State, ex rel. Kirk,* v. *Owens-Illinois, Inc.* (1986), 25 Ohio St. 3d 360, 361, 25 OBR 411, 411-412, 496 N.E. 2d 893, 895.

The only "substantive right" conceivably involved in this context is the right to *compensation* for work-related injuries. This right exists by virtue of Section 35, Article II of the Ohio Con-

---

[7] The amended statute does not, for example, call for the reduction of pre-amendment awards to an aggregate of one hundred percent. Nor does the amended statute preclude additional awards for the progression of a pre-amendment injury from eighty percent to ninety percent, for example, as any additional awards for such prior claims are governed by the law in effect at the time of the injury. See *State, ex rel. Vaughn,* v. *Indus. Comm.* (1982), 69 Ohio St. 2d 115, 23 O.O. 3d 161, 430 N.E. 2d 1332.

stitution, and the right is *defined and limited* within such constitutional grant by the General Assembly. Thus, prior to the 1963 amendment at issue here, an injured claimant was entitled to compensation (up to one hundred percent) for each separate, qualifying injury, without limitation. After the amendment, an injured claimant was still entitled to compensation (up to one hundred percent) for each separate, qualifying injury — *subject to* the aggregate percentage of any and all prior awards.

The fact that awards under R.C. 4123.57(B) are in the nature of general damages, *State, ex rel. Latino,* v. *Indus. Comm.* (1968), 13 Ohio St. 2d 103, 42 O.O. 2d 324, 234 N.E. 2d 912; *State, ex rel. Johnson,* v. *Indus. Comm.* (1988), 40 Ohio St. 3d 384, 533 N.E. 2d 775, does not create any *additional* substantive rights beyond those in existence at the time of the injury. Unlike typical tort-related damages claims, the "damages" awarded under R.C. 4123.57(B) may be defined and limited by the General Assembly in carrying out the mandates of Section 35, Article II of the Ohio Constitution. The Industrial Commission, in its brief in response to *amici curiae,* draws the court's attention to *Rose* v. *Mayfield* (1984), 20 Ohio App. 3d 300, 302, 20 OBR 392, 394-395, 486 N.E. 2d 197, 200, wherein the court observed:

"It must be kept in mind that the workers' compensation system is a product of a compromise between employers and employees. The court in *Allen* v. *Eastman Kodak Co.* (1976), 50 Ohio App. 2d 216, 225 [4 O.O. 3d 179], recognized:

" 'The workers' compensation laws of Ohio may well not be perfection in their attempt to compensate employees for their injuries, but they do provide a reasonably equitable balance between the rights, duties, and privileges of both the employee and the employer.' "

The *Rose* court, in a decision this court declined to review, soundly rejected the "equal opportunity to recover" argument espoused by the majority here, holding that the one hundred percent cap provided in amended R.C. 4123.57(B) does not violate the Equal Protection Clause of the United States Constitution or Section 26, Article II of the Ohio Constitution. *Id.* at 303, 20 OBR at 396, 486 N.E. 2d at 202.

Amended R.C. 4123.57(B) is not expressly made retrospective, and thus its constitutionality is not in issue. Because a claimant's award under this statute is governed solely by the law in effect on the date of the claimant's injury, the determination of awards for post-October 1963 injuries has *no* effect upon prior awards. Therefore, I dissent.