Appellant, Geraldine Jeffers, appeals the decision of the Clermont County Court of Common Pleas, Juvenile Division, to terminate appellant's parental rights and grant permanent custody of her daughter, Nikkia Branam ("Nikkia") to the Clermont County Department of Human Services ("CCDHS").[1] We affirm.
In October 1994, appellant was indicted on five counts of endangering her children in violation of R.C. 2919.22(A). In August 1995, appellant was found guilty in the Clermont County Court of Common Pleas on all five counts and sentenced to eighteen months in prison. Appellant had previously been convicted of endangering children on February 12, 1993. In December 1995, appellant received shock probation subject to a series of conditions, including an assessment and "mental health treatment" by the Clermont Counseling Center.
In June 1996, during a supervised visitation with one of her other children, appellant along with Tim Branam, abducted the child from the Hamilton County Department of Human Services ("HCDHS"). Appellant "threw the child in the van" and Branam drove away. Appellant was stopped immediately and Branam was eventually arrested in Kentucky. On September 18, 1997, appellant pled guilty to abduction in violation of R.C.2905.02(A)(1) in the Hamilton County Court of Common Pleas and was sentenced to five years of supervised probation.[2]
On September 27, 1997, appellant gave birth to Nikkia. At that time, appellant was incarcerated and was scheduled to be released in August 1998. On September 29, 1997, CCDHS filed a complaint alleging Nikkia was a dependent child. In anex parte order, the magistrate granted temporary custody of Nikkia to CCDHS. On October 15, 1997, the trial court granted CCDHS' motion to amend the complaint to a request for permanent custody of Nikkia.
In November 1997, appellant's probation was revoked by the Clermont County Court of Common Pleas and the sentence of eighteen months for endangering children was reimposed. Also, appellant pled guilty to falsification, R.C. 2921.13(A)(5), and was sentenced to six months in the Clermont County Jail. In June 1998, appellant pled guilty for failure to appear in violation of R.C. 2937.29.
Appellant is no longer raising any of her six other children. Her records with HCDHS date from 1991 until the time of the permanent custody hearing. Currently, two of appellant's children are in long-term foster care, three are being raised by their father and another is awaiting adoption.
On January 27, 1998, a magistrate held a permanent custody hearing. The magistrate recommended the natural parents' parental rights be terminated and permanent custody of Nikkia be granted to CCDHS. The guardian ad litem supported the position of CCDHS. Appellant filed objections to the recommendation of the magistrate. The trial judge overruled the objections and adopted the decision of the magistrate. From this ruling, appellant filed a timely notice of appeal and presents two assignments of error for our review:
Assignment of Error No. 1:
 THE PROVISION OF O.R.C. 2151.414(E)(5) VIOLATES THE FOURTEENTH AMENDMENT GUARANTEES OF DUE PROCESS AND EQUAL PROTECTION.
Assignment of Error No. 2:
 THE DECISION OF THE MAGISTRATE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In her first assignment of error, appellant asserts that R.C.2151.414(E)(5) violates the guarantees of due process and equal protection under the Fourteenth Amendment to the United States Constitution. This section of the permanent custody statute requires the trial court to find a child cannot be placed with a parent within a reasonable time if she is incarcerated for an offense against her child or a sibling of her child. Appellant argues that since R.C. 2151.414(E)(5) creates an irrebuttable presumption that Nikkia cannot be placed with appellant within a reasonable time, she is effectively denied due process and equal protection under the law.
Under the permanent custody statute, a trial court must find clear and convincing evidence that one of the factors in R.C.2151.414(E) is present to conclude a child cannot be placed with a parent within a reasonable time. As we detail in our discussion of the second assignment of error, R.C.2151.414(E)(5) is not the only section of R.C. 2151.414(E) that applies to this case. Therefore, we decline to address the constitutional question raised by appellant since this case can be adequately decided on nonconstitutional grounds. State exrel. Sears, Roebuck Co. v. Indus. Comm. (1990), 52 Ohio St.3d 144,149-50. Accordingly, the first assignment of error is overruled.
In the second assignment of error, appellant argues that the decision of the trial court was against the manifest weight of the evidence. We begin with the constitutional principle that natural parents have a constitutionally protected liberty interest in the care and custody of their children.Santosky v. Kramer (1982), 455 U.S. 745, 102 S.Ct. 1388. A motion by the state to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it." Id. at 759, 102 S.Ct. at 1397. In order to satisfy due process, the state is required to demonstrate by clear and convincing evidence that the statutory standards have been met.Id. at 769, 102 S.Ct. at 1403. "Clear and convincing evidence" requires that the proof "produced in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of syllabus.
When a state agency moves for permanent custody, the trial court is required to hold a hearing to determine "if it is the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A)(1). In order to grant permanent custody to a state agency, the agency must demonstrate that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed within a reasonable time with either of his parents within a reasonable time or should not be placed with his parents;
 (2) The child is abandoned and the parents cannot be located;
 (3) The child is orphaned and there are no relatives of the child who are able to take permanent custody.
R.C. 2151.414(B).
At a permanent custody hearing, the trial court shall consider all factors relevant to the child's best interest. R.C. 2151.414(D). The factors include, but are not limited to:
 (1) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressly directed to the child or through the guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether the type of placement can be achieved without a grant of permanent custody to the agency.
Id.
In this case, Clarence Pauley, supervisor of the Permanent Planning Unit of CCDHS, testified that Nikkia's chances for adoption were "100%." Pauley elaborated that Nikkia's foster family had expressed interest in adopting Nikkia and had been assessed and approved by CCDHS. In addition, Pauley felt that, due to appellant's inability to parent this child, it was in the best interest of Nikkia to grant permanent custody to CCDHS and allow the adoption process to move forward. Pauley's testimony and the other evidence discussed below support the trial court's determination that it was in Nikkia's interest to award permanent custody to CCDHS.
When granting permanent custody to a state agency, the trial court must also find that one of the factors enumerated in R.C.2151.414(E) exist. In re William S. (1996), 75 Ohio St.3d 95, syllabus.[3] The factors, in relevant part, are as follows:
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the [permanent custody] hearing * * *.
* * *
 (5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
* * *
 (12) Any other factor the court considers relevant.
R.C. 2151.414(E). If any of the factors apply, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." Id.
At the time of the permanent custody hearing, appellant was incarcerated for violating her probation from her conviction on five counts of endangering children. R.C. 2151.414(E)(5). However, as noted, other factors apply to this case.
Appellant was evaluated by Joseph Valentine Cresci, Jr., a psychiatrist. Cresci concluded that appellant is psychotic. Cresci testified that he reached this diagnosis by "[l]istening to her associations. There were grandiose delusions, paranoid delusions, somatic delusions in the interview." Specifically, appellant claimed that she attended the University of Heidelberg in Germany and had a degree in fine arts and had toured all the "major European museums." However, when Cresci questioned appellant about "fairly famous artists," appellant "had no idea who [Cresci] was talking about." Additionally, appellant stated that she had had "two major strokes," but Cresci, from his observation as a physician, did not see any evidence suggesting this was true. Cresci found that "her basic function is marginal at best * * *." Cresci felt treatment for appellant's type of mental illness would be difficult, and would be exacerbated because appellant had "been a long time without treatment."
Cresci felt appellant's delusions would preclude her from raising children "properly." Cresci noted that appellant felt her children had been put in foster care in order for the foster parents to "end up with some children." Cresci testified that this type of delusion "invades" any helpful program CCDHS might have available. Overall, the evidence establishes that appellant's chronic mental illness would preclude her from raising children at the time of the permanent custody hearing or within the following year. R.C. 2151.414(E)(2).
Tim Branam testified that he met appellant when he was fifteen and she was thirty-five years old. Branam was twenty-one years old at the time of the permanent custody hearing. Branam's testimony reflected that he could not parent Nikkia within a reasonable time due to his lack of maturity. This immaturity is evidenced by Branam's involvement in the abduction, his unstable financial status and lack of any reliable employment history. Appellant testified that Branam cannot even take care of himself. Significantly, Branam's testimony shows that he could not provide any meaningful parental support if appellant were to raise Nikkia.
Branam received a letter from appellant while in prison. In the letter, appellant indicated that without her children, she would kill herself or become involved in "drinking or druging [sic] or something." Appellant repeatedly states in the letter that she wishes to die. Branam testified that appellant blames him for "this situation."
The trial court was entitled to consider that appellant currently is not raising any of her previous six natural children and was unable to comply with HCDHS case plans concerning those children. R.C. 2151.414(E)(12). Additionally, as a thirty-five-year-old woman, appellant showed exceedingly poor judgment by becoming involved in an intimate relationship with a fifteen-year-old boy. Id. The record does not show that appellant has taken any responsibility for her past mistakes or has developed adequate coping skills in order to become an effective parent. Id.
In addition, appellant does not appear to have established a realistic plan to raise Nikkia. Appellant testified that she planned to take "law courses" and to "go into [her] art full time" by obtaining a business loan.
The totality of the facts, including appellant's chronic mental illness and significant criminal record provide clear and convincing evidence that Nikkia cannot be placed with appellant within a reasonable time. In addition, we find that it was in Nikkia's best interest to have permanent custody awarded to CCDHS. Accordingly, the second assignment of error is overruled.
Judgment affirmed.
KOEHLER and WALSH, JJ., concur.
[1] Nikki's father, Tim Branam, was present at the permanent custody hearing and represented by counsel. He has not appealed the decision of the trial court.
[2] The record also indicates that in August 1996, appellant was indicted for tampering with government records. In June 1997, appellant was indicted for failure to appear for a bond review.
[3] When William S. was decided, R.C. 2151.414(E) included eight specific factors. R.C. was subsequently revised to include twelve factors. Factor twelve is "[any] other factor the court deems relevant."