THE STATE EX REL. VAN GUNDY, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Van Gundy v. Indus. Comm.,*
111 Ohio St.3d 395, 2006-Ohio-5854.]

(No. 2005–2108—Submitted October 4, 2006—Decided November 29, 2006.)

Per Curiam.

{¶ 1} The court of appeals denied a writ of mandamus in this workers' compensation case. We affirm.

{¶ 2} Appellant Marvin Van Gundy filed workers' compensation claims for five workplace injuries that he sustained over the course of several years. The Bureau of Workers' Compensation found that Van Gundy's first injury in 1982 left him ten percent permanently partially disabled. The bureau also determined that the second injury in 1987 caused an additional 46 percent permanent partial disability ("PPD"), the third injury in 1997 caused an additional 18 percent PPD, the fourth injury in 2000 caused an additional 18 percent PPD, and the last injury in 2003 caused an additional six percent PPD. His award of PPD was therefore 98 percent after the fifth and final injury, and he evidently received the appropriate compensation from the bureau for each of his workplace injuries.

{¶ 3} In 2003, Van Gundy advised the bureau that he believed that the percentage of PPD resulting from his 2000 injury—the fourth injury—had increased from the 18 percent award initially recognized by the bureau. The bureau agreed and increased his percentage of PPD for that injury to 20 percent. Van Gundy nonetheless objected to the bureau's action, and a district hearing officer at the Industrial Commission agreed with him that the bureau should have increased the disability percentage for the 2000 injury by five percent rather than two percent. The hearing officer ordered that the percentage of PPD for Van Gundy's fourth workplace injury be increased to 23 percent from the original 18 percent figure.

{¶ 4} In 2004, the bureau asked the Industrial Commission to vacate the hearing officer's order. According to the bureau, the commission's order violated R.C. 4123.57 by allowing Van Gundy's percentage of permanent partial disability to exceed 100 percent. A staff hearing officer at the Industrial Commission agreed, finding that R.C. 4123.57 "precludes an award which would cause the total in all claims to exceed 100% permanent partial disability." He therefore vacated the district hearing officer's order.

{¶ 5} Van Gundy next filed a petition for a writ of mandamus in October 2004 in the Court of Appeals for Franklin County, alleging that the ten percent PPD award from his first workplace injury in 1982 should not have been counted by the staff hearing officer toward the 100 percent statutory cap on PPD compensation. That first injury claim had "lapsed," he alleged, and therefore any consideration of it was contrary to law.

{¶ 6} The court of appeals denied Van Gundy's mandamus claim, finding that the commission's staff hearing officer had properly applied the 100 percent cap to Van Gundy's five PPD claims.

{¶ 7} Van Gundy has now filed an appeal as of right. For the reasons that follow, we affirm the judgment of the court of appeals.

{¶ 8} R.C. 4123.57(A) provides that the bureau cannot award PPD compensation to an injured worker "based upon a percentage of disability which, when taken with all other percentages of permanent disability, exceeds one hundred per cent." The record shows that the district hearing officer's order increasing the PPD award for Van Gundy's fourth injury by five percent gave Van Gundy 103 percent PPD status.

{¶ 9} Van Gundy argues that the order was permissible under the statute and should not have been vacated by the staff hearing officer. His argument rests on the fact that he received his last workers' compensation payment for his oldest injury—the 1982 injury—more than ten years ago. That passage of time is significant, he contends, because R.C. 4123.52 directs that any "modification, change, finding, or award" for a workers' compensation claim be made by the bureau "within ten years from the date of the last payment of compensation."

{¶ 10} Yet, as the court of appeals below concluded, the staff hearing officer who vacated the order increasing the award of PPD did not modify, change, or make a finding concerning the 1982 claim. Van Gundy requested and was granted an increase for his fourth injury, which he incurred in 2000. The staff hearing officer who vacated the order allowing that increase simply added up the various percentages of PPD awards from Van Gundy's five workplace injuries and then applied the 100 percent cap from R.C. 4123.57(A). The fact that the first injury was then more than 20 years old did not lessen the permanency or the relevance of the ten percent PPD determination for that injury, for as one member of the court has very recently noted, "in the permanent-partial-disability context, 'permanent' refers to a claimant's lasting physical or mental impairment caused by the industrial injury." *State ex rel. Advantage Tank Lines v. Indus. Comm.*, 107 Ohio St.3d 16, 2005-Ohio-5829, 836 N.E.2d 550, ¶ 16 (Lanzinger, J., concurring).

{¶ 11} A "permanent" injury does not disappear or become irrelevant for purposes of R.C. 4123.57(A) simply because the worker is no longer receiving compensation for the injury. Nothing in R.C. 4123.57(A), in which the 100 percent cap is imposed, suggests that the bureau can or should ignore long-dormant claims—like Van Gundy's claim from his 1982 permanent injury—when calculating the percentages of permanent disability mentioned in that statute.

{¶ 12} We addressed this same issue 16 years ago when we explained that the 100 percent cap now codified at R.C. 4123.57(A) "requires[s] the Industrial Commission to aggregate all permanent partial disability awards * * * to determine when the one hundred percent permanent partial disability ceiling * * * has been reached." *State ex rel. Sears, Roebuck & Co. v. Indus. Comm.* (1990), 52 Ohio St.3d 144, 146, 556 N.E.2d 467. To be sure, we concluded in that earlier case that the 100 percent cap could not be applied retroactively to injuries

sustained before the 1963 effective date of the provision, but that portion of our holding is not relevant to this case, because Van Gundy's first injury occurred in 1982. We explained in the *Sears* decision that the General Assembly had expressed its clear and unambiguous intention, by amending the statute, "to have all permanent partial compensation percentage awards after 1963 aggregated in calculating the statutory one hundred percent ceiling." Id. at 148, 556 N.E.2d 467. That statement still holds true today.

{¶ 13} To be entitled to a writ of mandamus, a relator must carry the burden of establishing that he or she has a clear legal right to the relief sought, that the respondent has a clear legal duty to perform the requested act, and that the relator has no plain and adequate remedy in the ordinary course of law. *State ex rel. Luna v. Huffman* (1996), 74 Ohio St.3d 486, 487, 659 N.E.2d 1279. In light of the 100 percent cap on awards of PPD in R.C. 4123.57(A), Van Gundy cannot establish that he has a clear legal right to PPD compensation that would fix his percentage of permanent disability at 103 percent. The commission did not abuse its discretion when it applied that cap in Van Gundy's case. He was therefore not entitled to a writ of mandamus compelling the commission to reinstate the order awarding him a five percent increase in PPD, and the court of appeals properly granted judgment in the commission's favor on the mandamus complaint.

Judgment affirmed.

Moyer, C.J., Resnick, Pfeifer, Lundberg Stratton, O'Connor, O'Donnell and Lanzinger, JJ., concur.

————————

Philip J. Fulton Law Office and Jacob Dobres, for appellant.

Jim Petro, Attorney General, and Charissa D. Payer, Assistant Attorney General, for appellee Industrial Commission of Ohio.

Lee M. Smith & Associates Co., L.P.A., and Lisa R. Miller, for appellee Ohio Department of Rehabilitation and Correction.